FRANK A. SCHAECHER, Plaintiff-Appellant, *v.* WILLIAM D. REINWEIN, Defendant-Appellee.

Third District No. 74-278

Opinion filed September 29, 1976.

Peter M. Soble, of Rock Island, for appellant.

Katz, McAndrews, Durkee & Telleen, and Klockau, McCarthy, Lousberg, Ellison & Rinden, both of Rock Island (John M. Telleen, of counsel), for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This appeal is from the judgment of the circuit court of Rock Island County directing a verdict in favor of defendant, William D. Reinwein. The action was brought by plaintiff, Frank A. Schaecher, to recover damages sustained by reason of defendant's failure to make certain medical tests upon plaintiff.

■■ The issue, as stated by plaintiff-appellant, is whether the trial court erred in directing a verdict in favor of defendant, an orthopedic surgeon, when plaintiff had an orthopedic surgeon testify that defendant's negligence delayed definitive diagnosis, and when plaintiff made a showing of pain and suffering during that period of delay and could show loss of gainful employment. The injury complained of by plaintiff is delay in definitive diagnosis which plaintiff argues is a medical injury. He contends the harm resulting therefrom consisting of pain, suffering, mental anguish, and loss of earnings and employment, raised a factual question as to proximate cause. The general rule is that before a plaintiff can recover in a malpractice case, it must be shown by affirmative evidence that the defendant was unskillful or negligent and that his want of skill or care caused the injury to the plaintiff. (*Borowski v. Von Solbrig*, 60 Ill. 2d 418, 328 N.E.2d 301.) It follows that if there is a question of fact as to either defendant's negligence or such negligence being the

proximate cause of damages sustained by plaintiff, then the trial court cannot direct a verdict. The general rule as to the directing of verdicts is that verdicts ought to be directed in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504, and *Borowski v. Von Solbrig*, 60 Ill. 2d 418, 328 N.E.2d 301. At the close of all the evidence the trial judge directed a verdict in favor of the defendant.

Plaintiff had a history since 1965 of intermittent bowel disorders and mid-scapular pain. In February 1972, due to intense pain, he went to his family physician who was unable to diagnose the cause of the pain. In July 1972 the family physician hospitalized plaintiff, ordered numerous tests for internal organ disorders and prescribed pain-killing drugs. A minimal amount of degenerative change was found in the lumbar spine.

In July 1972 plaintiff sought treatment from an orthopedist who treated plaintiff conservatively during a 10-day hospital stay for continuing thoracic and lumbar spine disorders. In August 1972 because of continuing complaints on the part of the plaintiff, the orthopedist ordered a lumbar myelogram taken of plaintiff, the results of which myelogram showed findings that were not grossly abnormal. Because of continuing pain, plaintiff on about October 27, 1972, consulted defendant, an orthopedic surgeon. Plaintiff claims defendant did not obtain a medical history from plaintiff but did review the previous hospital records. Defendant denies this alleged failure to take a medical history. On October 29, 1972, defendant caused a lumbar myelogram to be performed which showed a minimal extra-dural defect at the disc between L4-5 on the left. Defendant performed a laminectomy the next day. Plaintiff continued to have pain and in early February 1973 defendant told plaintiff he might have cancer and that he should go to Mayo Clinic for an emergency evaluation. Plaintiff then went back to his family physician who hospitalized him on February 2, 1973, and was unable to make a diagnosis. On February 12, 1973, plaintiff entered Mayo Clinic and on February 27, 1973, he underwent surgery for a cancerous tumor of the thoracic spine. During the two weeks at the Mayo Clinic prior to this surgery plaintiff was examined by about 25 to 30 doctors, including teams of internists, orthopedists, neurologists, and neurosurgeons. After a period of convalescence he has returned to a normal life. On March 15, 1973, plaintiff claims he was terminated from his job as an insurance salesman because he was ill for longer than the six months ordinarily permitted by the company. Defendant disputes the reasons for which plaintiff was discharged from his job.

At trial plaintiff's expert, an orthopedic surgeon, testified that in light of

all the evidence, defendant was negligent in not looking for concurrent pathology; that there were enough red flags symptomatically to warrant further investigation; that any competent orthopedist would have looked beyond lumbar disc pathology, and that defendant's negligence in not taking a complete myelogram to the first cervical level, a bone scan and an electro-myogram caused delay in definitive diagnosis, irrespective of what that diagnosis might be. Plaintiff cites *O'Brien v. Stover* (8th Cir. 1971), 443 F.2d 1013, as being a case whose factual circumstances are identical to the ones in the case at bar. The similarities plaintiff emphasizes are that in *O'Brien*, the defendant, an oral surgeon, extracted plaintiff's decedent's tooth with the diagnosis of pyorrhea and subsequently saw that the socket was not healing properly. Plaintiff could not make a showing that the cancer from which plaintiff eventually died was diagnosable at that time. Plaintiff's theory was that defendant might have ordered certain tests but did not, and therefore there was a delay in definitive diagnosis. There, as in the case at bar, defendant contended there was nothing wrong with his work and that the same result would have occurred in any event. The court found that the cancer was probably present when the deceased consulted the defendant initially and that even though it could be shown the deceased would have died anyway, a question of fact was raised and the jury's award to plaintiff was affirmed. The plaintiff's expert in *O'Brien* testified that the decedent's cancer was probably present on June 9, 1967, and a tissue biopsy would have revealed it. Defendant had first seen plaintiff for treatment about one month earlier. Plaintiff's theory was that a tissue biopsy would have revealed the cancer and that if the cancer had been revealed at this time decedent's chances for survival would have been better, and in any event she would have lived longer and in more comfort and that defendant was negligent in not diagnosing the cancer by performing a tissue biopsy.

*O'Brien v. Stover* (8th Cir. 1971), 443 F.2d 1013, supports the general theory that a delay in definitive diagnosis is a medical harm for which a physician may be held liable for damages proximately caused thereby. However, what plaintiff's evidence in the instant case does not show is that the tests which plaintiff's expert testified should have been conducted were reasonably required in the community where plaintiff and defendant resided or that there was any proximate connection between defendant's failure to perform these tests and the plaintiff's injuries. There is evidence that the electro-myogram and the bone scan were not available under the conditions existing in the community at the time defendant treated plaintiff. Although defendant did not perform a full column myelogram there was evidence that he did in fact extend the myelogram into the thoracic area and no anomalies were demonstrated on the scanner. We note plaintiff originally alleged that defendant did not

do a myelogram in the thoracic area and later substituted an allegation defendant did not order a full column myelogram.

■■ Plaintiff's expert offered no opinion as to the existence of the tumor at the time of the examination and treatment by defendant. There was no testimony offered by the physicians who operated on plaintiff at the Mayo Clinic. Likewise, there was no testimony by the physicians at the Mayo Clinic who made the diagnosis which resulted in the operation. Plaintiff's case is based on conjecture, not evidence, and consistent with the rule established by *Pedrick* the evidence in the instant case, when viewed in its aspect most favorable to plaintiff-appellant, so overwhelmingly favors defendant that no contrary verdict based on that evidence could ever stand.

For the foregoing reasons the judgment of the circuit court of Rock Island County is affirmed.

Judgment affirmed.

ALLOY, P. J., and BARRY, J., concur.