WILLIAM SCARDINA, Plaintiff-Appellant, v. SHIN II EUGENE NAM *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—00—1737

Opinion filed May 8, 2002.—Rehearing denied September 19, 2002.

Clifford Law Offices, of Chicago (Robert A. Clifford, Matthew I. Baker, and Robert P. Sheridan, of counsel), for appellant.

Hinshaw & Culbertson, of Chicago (Stephen R. Swofford and James M. Hofert, of counsel), for appellees.

JUSTICE CERDA delivered the opinion of the court:

In this case, plaintiff, William Scardina, appeals the orders of the circuit court directing a verdict in favor of defendants Shin II Eugene Nam, a radiologist, and his employer, Behinfar Associates in Radiology (Behinfar Associates), and entering summary judgment in favor of defendant Alexian Brothers Medical Center (Alexian Brothers) on his claims of medical negligence stemming from the alleged failure of defendants to properly diagnose and treat a gastrointestinal disease known as diverticulitis. The principal issue raised by plaintiff's appeal is whether the evidence introduced at trial was sufficient to allow the jury to consider the issue of Dr. Nam's purported negligence in failing to diagnose plaintiff's ailment and, specifically, whether Dr. Nam's conduct proximately caused plaintiff's condition to worsen and require further medical attention. For the following reasons, we affirm.

## BACKGROUND

### Plaintiff's Medical Condition and Treatment

In the latter part of August 1994, plaintiff experienced chronic stomach pain, diarrhea and fever. On August 31, 1994, plaintiff sought treatment from his family physician, Dr. Carlotta Rinke. Because Dr. Rinke was unavailable at the time, plaintiff met with Dr. Rinke's associate, Dr. Ronald Ledvora. Dr. Ledvora examined plaintiff and diagnosed a possible case of diverticulitis. Dr. Ledvora prescribed an antibiotic, Cipro, and instructed plaintiff to schedule a follow-up visit with Dr. Rinke.

Diverticulitis is a disease of the intestines.[1] While diverticulitis may affect the small intestine, the condition occurs most frequently in the large intestine, mainly in the sigmoid colonic region. The disease forms where small, weakened pockets of the intestinal wall become inflamed and eventually perforate, thereby creating a fistula, or pathway, for bacteria to escape and leak out into the abdominal cavity. This bacteria, in turn, can lead to the formation of an abscess, a term generally described as a localized collection of pus in the body's tissues which, itself, commonly causes inflammation.

Plaintiff's condition improved slightly over the few days following his visit with Dr. Ledvora. However, by week's end, his condition had worsened and plaintiff returned to Dr. Rinke's office on September 8, 1994. Following an examination, Dr. Rinke advised plaintiff he needed to be hospitalized and seen by a surgeon immediately.

Plaintiff was transported and admitted to Alexian Brothers on September 8, where he was examined by Dr. Cacioppo, a surgeon, and Dr. Nam. An abdominal CT scan, as interpreted by Dr. Nam, revealed the presence of a large abscess in the left side of plaintiff's abdomen and in front of the mid-portion of the descending colon. A large area of inflammation was present in the surrounding areas of fatty tissues that invest the intestines. Based on his observations, Dr. Nam concluded plaintiff's abscess was "most likely related to a perforated intestine." Dr. Nam attempted to trace the abscess to the sigmoid colon or appendix but was unable to due to the positioning of the small bowel loops.

Additional tests, including a gastrografin enema, were conducted to determine the presence of any abnormalities with plaintiff's intestines. In a gastrografin enema, a contrast liquid or dye is injected under pressure into the patient's large intestine via the rectum to determine the presence of fistulas, which may be detected by a visualization of the contrast liquid leaking outside the intestinal walls.

---

[1] The intestinal tract consists of the small intestine, otherwise known as the small bowel, and the large intestine, also referred to as the large bowel or colon. The small intestine has three sections—starting from the stomach and working down, these sections are the *duodenum*, the *jejunum*, and the *ileum*. The small intestine ends at the *ileocecal valve*, which represents the junction with the large intestine.

The large intestine consists of the following sections, beginning with the ileocecal valve: the *cecum*, the *ascending colon* (which moves up from the pelvic region on the right side of the body), the *transverse colon* (which crosses the midline of the abdominal cavity), the *descending colon* (which moves down the left side of the body to the pelvic region), and, finally, the *sigmoid colon* (which loops down from the pelvic region and ends in the *rectum*).

A number of spot films, or snapshots of a particular area, were taken by Dr. Nam as the contrast liquid progressed through plaintiff's colon. Dr. Nam further prepared overhead films of plaintiff's entire abdominal region throughout the contrast process.

In his diagnostic report, Dr. Nam noted the free flow of contrast from the rectum up to the cecum and observed an abscess cavity in plaintiff's left mid-abdomen, which confirmed the results of the earlier CT scan. Dr. Nam did not directly observe any leakage of the contrast outside the walls of the colon and, specifically, did not note any indications of an early fill, or a premature filling of the small intestine with the contrast before the contrast has moved completely through the colon. According to plaintiff's experts, where no abnormalities exist in the colonic wall, one would normally expect the contrast liquid to fill the entire colon before it enters the small intestine. The filling of the small intestine with contrast liquid before the contrast has filled the entire colon is, according to the experts, abnormal, suggesting the presence of a fistula in some area of the colonic wall. A determination of an early fill is made when no direct evidence of a fistula is apparent and is predicated on the premise that the contrast liquid could only enter the small bowel prior to the filling of the colon if a fistula was present.

Dr. Nam's gastrografin report additionally noted the presence of diverticula in the sigmoid colon and concluded the presence of "mild sigmoid diverticulitis." Dr. Nam, however, did not observe any direct evidence of bowel perforations.

Upon review of the relevant studies and diagnostics, Dr. Cacioppo diagnosed plaintiff with having a small bowel perforation with an intra-abdominal abscess. On September 12, 1994, following drainage of the abscess and the administration of intensive antibiotics, a sinogram, a process in which a contrast liquid is injected into the drained abscess cavity to ascertain whether the abscess in contact with, for instance, the intestinal walls, was performed. The sinogram revealed, according to Dr. Nam's diagnostic report, a communication, or connection, of the abscess with the small intestine, thus confirming Dr. Cacioppo's belief of a small bowel fistula.

Surgery on plaintiff was ultimately performed by Dr. Cacioppo on September 15, 1994. During this procedure, Dr. Cacioppo found the abscess situated between loops of small bowel and in direct contact with the jejunum. Due to its continuity with the small bowel, the abscess had caused three perforations of the jejunum wall. Dr. Cacioppo additionally observed malrotation, or twisting, of plaintiff's small intestine. Dr. Cacioppo extracted both the abscess and the perforated area of the small bowel and rejoined the exposed ends of the jejunum.

While Dr. Cacioppo did not testify during plaintiff's case, the record indicates Dr. Cacioppo would have stated that: due to concerns about the possibility of perforations in the large intestine, he visualized the sigmoid colon for abnormalities but found nothing unusual. Dr. Cacioppo detected no evidence of an enterocolonic fistula, or an abnormal connection between the small and large intestines. Further, the perforated area of plaintiff's small bowel was not in contact with the colon and, in fact, was found by Dr. Cacioppo to be nowhere near the colon.

The September 15 surgery did little to alleviate plaintiff's condition. An additional CT scan conducted on September 19, 1994, revealed the formation of a new abscess in the plaintiff's lower pelvic region, in proximity to the sigmoid colon. The abscess was drained and a sinogram conducted on September 21 led Dr. Nam to diagnose a perforation of plaintiff's rectosigmoid colon, the area of the large intestine where the sigmoid colon and rectum meet.

Upon reviewing Dr. Nam's diagnostics, Dr. Cacioppo consulted Dr. Sara Fredrickson, a fellow surgeon, on September 22, 1994. Upon review of plaintiff's case history, including the radiological studies and Dr. Cacioppo's operative report, Dr. Fredrickson concluded that plaintiff's original abscess was most likely due to leakage of bacteria from the sigmoid colon probably secondary to an isolated area of diverticulitis. Reading the September 8 gastrografin enema films as depicting an early fill of the small intestine, Fredrickson further suspected an enterocolonic fistula.

The newly formed abscess, which was found near the rectosigmoid colon, was removed by Dr. Cacioppo during a second surgery conducted September 23, 1994. Dr. Cacioppo resected the diseased portion of the sigmoid colon, resulting in a colostomy, and the extracted colon specimen was sent to pathology for analysis. The record indicates the area of intestine extracted during the second surgery included a portion of the sigmoid colon situated near the rectal junction as well as a portion of the rectosigmoid colon.

Plaintiff continued to experience difficulties following the second surgery. Plaintiff particularly suffered pain, endured convulsions, and battled a period of septic shock. Furthermore, later efforts to reverse the colostomy proved unsuccessful and, as a result, plaintiff's colostomy is now permanent.

## Plaintiff's Lawsuit

Plaintiff filed an amended medical malpractice action against Alexian Brothers, Dr. Ledvora, his employer Suburban Health Care Medical Associates (Suburban Health Care), Dr. Nam and Behinfar Associ-

ates.[2] Drs. Ledvora and Nam were alleged to have acted negligently in failing to timely and properly diagnose and treat plaintiff's intestinal condition. The liability of the remaining defendants was asserted to be vicarious; the imposition of liability of Suburban Health Care and Behinfar Associates was sought under a theory of *respondeat superior*, whereas the liability of Alexian Brothers was predicated upon a theory of apparent agency.

Alexian Brothers eventually moved for summary judgment on the basis plaintiff was unable to establish that Nam was acting as the hospital's apparent agent during the medical treatment at issue. The circuit court agreed and granted Alexian Brothers' motion. Following the court's finding of no just reason to delay the enforcement of its ruling, plaintiff instituted an appeal to this court in early 1998 seeking reversal of the circuit court's ruling and reinstatement of his case against the hospital.

In the meantime, the claims against the remaining defendants proceeded to trial. The theory of liability espoused by plaintiff against Dr. Nam was that plaintiff suffered from diverticulitis of the sigmoid colon upon his admittance to Alexian Brothers on September 8. Prior to September 8, plaintiff's diverticulitis caused the development of colonic fistulas, which led to the leakage of bacteria and ultimately the formation of a large intra-abdominal abscess. Due to its inflammatory process, the abscess caused perforations of the small intestine. In the meantime, the small and large intestines adhered to one another at the spot of the colonic perforation, thereby causing an enterocolonic fistula.

Plaintiff conceded the September radiological films do not reveal direct evidence of a colonic perforation. Plaintiff, instead, maintained the foregoing films show an early fill, thereby suggesting the presence of the enterocolonic fistula. Dr. Nam, according to plaintiff, failed to recognize the possibility of the abnormal intestinal connection and, thus, did not report that information to Dr. Cacioppo prior to the September 15 surgery. As a result, Dr. Cacioppo, whom plaintiff concedes acted within the applicable standard of care given the information provided him, did not treat the diseased portion of the sigmoid colon. Consequently, the colonic fistula persisted and continued to leak bacteria, leading to the formation of a new abscess and additional complications. Plaintiff claimed Dr. Nam's failure to recognize and report the possible enterocolonic fistula from the September 8 radiological studies lessened the effectiveness of Dr. Ca-

---

[2]Plaintiff also sued Drs. Rinke and Cacioppo. These claims were nonsuited by the circuit court on March 30, 1999.

cioppo's September 15 surgery and necessitated further medical treatment.

In support of his theory, plaintiff presented the expert testimonies of Drs. Sara Fredrickson, James Edney, a surgeon, Marshall Sparberg, a gastroenterologist, and Robert Vogelzang, a diagnostic radiologist. Each of the foregoing physicians opined that plaintiff's original abscess was most likely caused by a case of diverticulitis in the sigmoid colon that had manifested by the time the September 8 radiological studies were conducted.

In formulating their respective opinion, Drs. Fredrickson, Edney and Vogelzang each testified that the September 8 radiological studies suggested an early filling of the small intestine. Hence, according to the doctors, the films suggested a perforation of plaintiff's colon and an abnormal connection with the small intestine. Drs. Edney and Vogelzang, in particular, believed the enterocolonic fistula involved the sigmoid colon. In this regard, Dr. Vogelzang explained that the films show plaintiff's sigmoid colon to be collapsed, an indication, according to the doctor, that the contrast liquid was leaking and rapidly entering the small bowel.

Drs. Edney and Vogelzang further testified that the radiological films depicted the presence of sigmoid colonic diverticulitis. From the spot films taken during the gastrografin enema, Dr. Edney noted irregularity in certain areas of plaintiff's sigmoid colon and specifically observed an area where he detected the presence of a diverticulum. That area, according to Dr. Edney, signaled diverticulitis.

Dr. Vogelzang similarly stated the radiological studies revealed the presence of a large abscess in continuity with the descending colon and in close proximity to the sigmoid colon. Dr. Vogelzang specifically noted the fatty tissue immediately below the abscess showed signs of a very significant inflammatory process involving the upper, or superior, sigmoid colon. According to the doctor, the films depict all the "hallmark findings of diverticulitis."

With respect to the gastrografin spot films, Dr. Vogelzang stated the films show a collection of contrast liquid in the sigmoid colon which, according to the doctor, indicated a leakage of the contrast and a perforation of the sigmoid colon. While Dr. Vogelzang never identified the specific area of perforation, he stated the films show the perforation to lie in the superior, or upper, portion of the sigmoid colon. The record indicates Dr. Vogelzang, specifically referring to the radiological films, highlighted for the jury the particular area of the sigmoid colon where he believed the perforation was located. Dr. Vogelzang did not believe the films showed the perforation to be in the rectosigmoid junction, the area of colon extracted by Dr. Cacioppo dur-

ing the second surgery. Yet, Dr. Vogelzang stated the area of perforation suggested by the radiological studies, while shown not to be in the rectosigmoid area, was "just beyond it, not far."

Drs. Edney and Vogelzang both stated the applicable standard of care required Dr. Nam to have noted the early fill depicted by the September 8 radiological films and, hence, recognize a possible abnormal connection between plaintiff's sigmoid colon and small intestine. Dr. Vogelzang further stated Dr. Nam would have been expected to note the probable location of the process on the sigmoid colon. Hence, the doctors opined Dr. Nam should have alerted Dr. Cacioppo of a possible enterocolonic fistula prior to the September 15 surgical procedure.

Dr. Edney specifically explained the role radiologists like Dr. Nam play in the surgical procedure. Dr. Edney stated it is within the applicable standard of care for a surgeon to defer to a radiologist as to what pre-operative radiological films do or do not depict. Radiologists, according to Dr. Edney, provide a road map for the surgeon by his or her interpretation of the radiological studies. This road map provides the operating surgeon with insight as to what the problem may be and enables the surgeon to formulate a plan as to how best to proceed with the surgical procedure. Dr. Edney stated accurate and complete radiological information is especially necessary in cases like plaintiff's, where the surgery would be difficult given the inflammatory process caused by the patient's abscess. Dr. Edney explained "the whole thing could be very, very confusing. Often times you *** [are] not *** able to tell what loop of bowel you are looking at. It's just a big knot and a mess. Sometimes you can't even tell colon from small intestine."

Dr. Edney stated Dr. Nam's failure to detect the enterocolonic fistula most likely prevented Dr. Cacioppo from detecting the sigmoid diverticulitis during the initial surgery. Dr. Edney stated that the abscess that was treated during the second surgery was most likely due to continued contamination from the diseased portion of sigmoid colon that went undetected by Dr. Nam prior to the September 15 procedure and untreated by Dr. Cacioppo. As a result of Dr. Cacioppo's inability to properly treat plaintiff, the leakage of intestinal bacteria from the sigmoid colon persisted and plaintiff developed a new abscess and further complications. Dr. Edney, as well as Dr. Fredrickson, explained that a reasonably well-qualified surgeon, like Dr. Cacioppo, who had been properly alerted to a possible enterocolonic fistula, would have examined the sigmoid colon, identified the diseased portion thereof, and surgically treated the involved area by performing a colostomy.

At the close of plaintiff's case, Dr. Nam moved for a directed verdict

on the basis that plaintiff's evidence failed to establish that Dr. Nam's deviations from the applicable standard of care proximately caused the harm suffered by plaintiff following the September 15 surgery. While noting that the evidence unequivocally established a deviation of the applicable standard of care on Dr. Nam's part, the circuit court found plaintiff's evidence on the issue of causation insufficient, principally citing plaintiff's failure to show what, if anything, Dr. Cacioppo would have done differently had he been informed of the possible enterocolonic fistula by Dr. Nam. Additionally, because its asserted liability was purely vicarious, Dr. Nam's purported employer, Behinfar Associates, was also granted a directed judgment.

At the close of trial against the remaining defendants, the jury returned a verdict in favor of plaintiff and against Dr. Ledvora and Suburban Health Care in the aggregate amount of $3,350,000. On December 29, 1999, plaintiff moved the court to reconsider its judgment in favor of Dr. Nam and Behinfar Associates. Dr. Ledvora and Suburban Health Care also filed posttrial motions.

While the parties' posttrial motions remained pending, on March 8, 2000, this court issued its decision in *Scardina v. Alexian Brothers Medical Center*, 308 Ill. App. 3d 359, 719 N.E.2d 1150 (1999), which reversed the circuit court's earlier entry of summary judgment order in favor of Alexian Brothers and reinstated plaintiff's claims against the hospital. Plaintiff's cause against Alexian Brothers was formally reinstated by the circuit court on March 29, 2000, and the matter was thereafter consolidated with plaintiff's claims against the other party-defendants.

Alexian Brothers followed by moving for summary judgment on the basis it could not be held liable under an apparent agency theory when plaintiff's evidence against its purported agent, Dr. Nam, was insufficient to establish negligence. The circuit court agreed and, on April 25, 2000, the court granted summary judgment in favor of Alexian Brothers and denied plaintiff's posttrial motions.

Plaintiff's timely appeal followed.

## ANALYSIS

■ Plaintiff's principal contention on appeal is that the circuit court erred in granting Dr. Nam's motion for a directed verdict. In cases tried before a jury, a directed verdict is appropriate when, viewing the evidence in a light most favorable to the nonmovant, the evidence so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (1967); *Seldin v. Babendir*, 325 Ill. App. 3d 1058, 1062, 759 N.E.2d 28, 32 (2001). Where

the evidence fails to demonstrate a substantial factual dispute, or where the assessment of witness credibility or resolution of conflicting evidence is not decisive to the case, a directed verdict should be granted. *Johnson v. Owens-Corning Fiberglas Corp.*, 313 Ill. App. 3d 230, 235, 729 N.E.2d 883, 887 (2000). Since the circuit court is not required to weigh evidence, resolve conflicts in the evidentiary record or assess the credibility of witness testimony, a ruling on a motion for a directed verdict is reviewed *de novo. Susnis v. Radfar*, 317 Ill. App. 3d 817, 825, 739 N.E.2d 960, 966 (2000); *Johnson*, 313 Ill. App. 3d at 235, 729 N.E.2d at 887.

■ To succeed on a claim of medical negligence, the plaintiff must prove that the medical provider's deviation from an applicable standard of care proximately caused the injury complained of, thereby resulting in damages. *Williams v. University of Chicago Hospitals*, 179 Ill. 2d 80, 86, 688 N.E.2d 130, 133 (1997). Here, only plaintiff's showing on the causation element is at issue. Proximate cause has two components: cause in fact and cause in law. Cause in fact, in particular, must typically be established by expert testimony and requires a medical malpractice plaintiff to establish, to a reasonable degree of medical certainty, that the defendant's malpractice more probably than not caused his or her injury. *Aguilera v. Mount Sinai Hospital Medical Center*, 293 Ill. App. 3d 967, 972, 691 N.E.2d 1, 5 (1997); *Lambie v. Schneider*, 305 Ill. App. 3d 421, 426, 713 N.E.2d 603, 607 (1999); *Newell v. Corres*, 125 Ill. App. 3d 1087, 1092, 466 N.E.2d 1085, 1089 (1984).

■ To establish the requisite cause in fact, plaintiff relied on the "loss of chance" doctrine. See *Lambie*, 305 Ill. App. 3d at 428, 713 N.E.2d at 609 (noting doctrine is employed to prove cause-in-fact prong of proximate causation analysis). As relevant to the theory presented by plaintiff at trial, the loss-of-chance doctrine refers to the harm resulting to a plaintiff where a missed or delayed diagnosis of a condition has lessened the effectiveness of treatment or increased the risk of an unfavorable outcome. *Holton v. Memorial Hospital*, 176 Ill. 2d 95, 111, 679 N.E.2d 1202, 1209 (1997); *Townsend v. University of Chicago Hospitals*, 318 Ill. App. 3d 406, 410, 741 N.E.2d 1055, 1058 (2000). The doctrine is not a separate theory of recovery but, rather, a concept that factors into the proximate cause analysis. *Aguilera*, 293 Ill. App. 3d at 973, 691 N.E.2d at 5. In such instances, proximate causation can be established if the plaintiff can prove, to a reasonable degree of medical certainty, that the defendant's failure to render a timely diagnosis more probably than not compromised the effectiveness of treatment received or increased the risk of harm to the plaintiff. *Holton*, 176 Ill. 2d at 119, 679 N.E.2d at 1213; *McDaniel v. Ong*, 311 Ill. App. 3d 203, 210, 724 N.E.2d 38, 43 (1999); *Aguilera*, 293

Ill. App. 3d at 972, 691 N.E.2d at 5. While we are mindful that this determination is fact specific and, as such, is a matter best left for the jury's resolution, the issue may be decided on a motion for directed verdict where the evidence, viewed in a light most favorable to the plaintiff, fails to sufficiently connect the defendant's conduct to the claimed injury. See *Townsend*, 318 Ill. App. 3d at 413, 741 N.E.2d at 1060; *Saxton v. Toole*, 240 Ill. App. 3d 204, 211, 608 N.E.2d 233, 238 (1992); *Schaecher v. Reinwein*, 41 Ill. App. 3d 1055, 1056-57, 355 N.E.2d 351, 352 (1976).

●4 Viewing the evidence in a light most favorable to plaintiff, we find plaintiff's evidence insufficient to raise a jury question as to whether Dr. Nam's failure to render an accurate diagnosis from the September 8 radiological films lessened the effectiveness of Dr. Cacioppo's initial surgery. According to plaintiff, Dr. Nam's missed diagnosis prevented Dr. Cacioppo from detecting the sigmoid colon perforations that were discovered during the second surgical procedure. Had Dr. Nam rendered a timely and accurate diagnosis, plaintiff contended, Dr. Cacioppo would have located the involved portion of colon and performed a colostomy. The evidence, however, does not support plaintiff's contention and specifically fails to show that a proper diagnosis by Dr. Nam would have led Dr. Cacioppo to find the sigmoid colonic perforation during the first surgery.

The crux of plaintiff's position is that Dr. Cacioppo would have examined the colon and found the sigmoid colonic perforations had Dr. Nam reported the possibility of a enterocolonic fistula. Yet, Dr. Cacioppo did just that and found no abnormalities. The record reveals Dr. Nam informed Dr. Cacioppo prior to the September 15 surgery of the presence of a mild case of diverticulitis in plaintiff's sigmoid colon. In light of Dr. Nam's diagnostic findings, and due to concerns of his own, Dr. Cacioppo examined plaintiff's entire colon and observed neither colonic perforations nor abnormal connections between the large and small bowels.

Plaintiff maintains the expert testimony presented at trial establishes that had Dr. Cacioppo been alerted to the possible enterocolonic fistula and its likely location, he, as well as other reasonably well-qualified surgeons, would have removed the portion of colon suspected of being diseased, *irrespective* of whether the operating surgeon actually discovered perforations during surgery. The evidence does not support plaintiff's contention. Drs. Fredrickson and Edney each indicated that a colonic perforation would have to be identified before any surgical extraction would be performed. Contrary to plaintiff's assertions, neither witness stated that a portion of intestine, which radiological films suggested to be diseased, would be removed

by a surgeon without determining whether the suspected intestinal area was indeed affected.

Notably, the extent of Dr. Cacioppo's examination of plaintiff's colon is not revealed by the record. For reasons only known to plaintiff, Dr. Cacioppo was not called as a witness. Perhaps, because Dr. Cacioppo was never alerted to the possible enterocolonic fistula, his examination may have been cursory at best, with little attention paid by the doctor to detecting the presence of abnormalities. Yet, by the same token, Dr. Nam's report of mild sigmoid diverticulitis, coupled with the nature of the abscess and concerns of colonic disease, may have led Dr. Cacioppo to perform a detailed and meticulous inspection that proved unremarkable. Thus, while it is possible that Dr. Cacioppo's examination was unceremonious, it is just as likely that his exam was as thorough as it would have been had Dr. Nam properly interpreted the radiological films. Due to the want of evidence regarding Dr. Cacioppo's examination of plaintiff's colon, the record fails to lend a reasonable inference that Dr. Cacioppo would have done anything different in his examination had he been alerted to a possible enterocolonic fistula. Plaintiff has simply not shown what Dr. Cacioppo would have done differently, if anything, with respect to his efforts to locate perforations in the colon. The causal connection must not be contingent, speculative or merely possible but, rather, must be shown by such a degree of probability as to amount to a reasonable certainty that such a nexus exists. *Harmon v. Patel*, 247 Ill. App. 3d 32, 37, 617 N.E.2d 183, 187 (1993). As the record stands, the jury would be left to speculate as to the extent and nature of Dr. Cacioppo's exam and to whether Dr. Nam's missed diagnosis would have altered the outcome of the first surgery.

Because the evidence fails to sufficiently raise a jury question as to whether Dr. Nam's missed diagnosis lessened the effectiveness of Dr. Cacioppo's September 15 surgery, we affirm the circuit court's entry of judgment in favor of Dr. Nam. See *Gill v. Foster*, 157 Ill. 2d 304, 310, 626 N.E.2d 190, 193 (1993) (upholding summary judgment in favor of defendant hospital where the record failed to show that the doctor, who was aware of the plaintiff's complaints and had dismissed them as insignificant, would have done anything different had defendant's nurses reported the plaintiff's complaints to the doctor); *Sunderman v. Agarwal*, 322 Ill. App. 3d 900, 904, 750 N.E.2d 1280, 1284 (2001) (holding no question as to proximate cause existed where the evidence showed that the defendant doctor would not have done anything different had the results of a pathology report been accurately presented); *Susnis*, 317 Ill. App. 3d at 827, 739 N.E.2d at 967 (finding evidence of proximate cause insufficient to raise jury question where the evidence

was speculative as to whether the treating physician would have acted differently had the defendant doctor indicated that the minor had an abnormal heart); *cf. Holton,* 176 Ill. 2d at 110, 679 N.E.2d at 1209-10 (finding proximate causation established where evidence, which revealed that medical providers would have embarked on a different course of treatment had they been properly apprised of the plaintiff's condition by the defendants, permitted a reasonable inference that the defendants' omissions prevented the medical providers from rendering proper treatment).

Plaintiff's failure to present sufficient evidence of Dr. Nam's malpractice is fatal to his vicarious liability claims against Behinfar Associates and Alexian Brothers. Accordingly, judgment entered in their favor is likewise affirmed.

## CONCLUSION

For the foregoing reasons, the order of the circuit court directing judgment in favor of Dr. Nam and Behinfar Associates is affirmed. The circuit court's order granting Alexian Brothers summary judgment is also affirmed.

Affirmed.

HALL, P.J., and WOLFSON, J., concur.