# Illinois Official Reports

## Appellate Court

---

## *Shicheng Guo v. Kamal*, 2020 IL App (1st) 190090

---

| | |
|---|---|
| Appellate Court Caption | SHICHENG GUO, as Special Administrator of the Estate of Shiqian Bao, Deceased, Plaintiff-Appellant, v. KAMRAN KAMAL, M.D.; INTERNATIONAL TELERADIOLOGY, LLC; SWEDISH COVENANT HOSPITAL; ADVOCATE HEALTH AND HOSPITALS CORPORATION, d/b/a Lutheran General Hospital; GEORGE BOVIS, M.D.; CENTER OF BRAIN AND SPINE SURGERY, S.C.; ROBERT KELLOGG, M.D.; and RUSH UNIVERSITY MEDICAL CENTER, Defendants (Kamran Kamal, M.D., International Teleradiology, LLC, and Swedish Covenant Hospital, Defendants-Appellees). |
| District & No. | First District, First Division<br>Nos. 1-19-0090, 1-19-0365 cons. |
| Filed | March 2, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-L-4606; the Hon. Patricia O'Brien Sheahan, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Phillips Law Offices, of Chicago (Terrance M. Quinn and Kurt R. Ensign, of counsel), for appellant. |

Donohue Brown Mathewson & Smyth LLC, of Chicago (Karen Kies DeGrand, Stetson F. Atwood, and Jack A. Battaglia, of counsel), for appellees Kamran Kamal and International Teleradiology, LLC.

Lowis & Gellen LLP, of Chicago (Kevin J. Clancy, Lee A. Williams, and Leighanne E. Root, of counsel), for other appellee.

Panel       JUSTICE PIERCE delivered the judgment of the court, with opinion. Justices Hyman and Walker concurred in the judgment and opinion.

**OPINION**

¶ 1   This is an appeal from the entry of summary judgment in favor of defendants, Swedish Covenant Hospital (Swedish Covenant), Kamran Kamal, M.D., and International Teleradiology, LLC (International Teleradiology), in a wrongful death and survival action brought by plaintiff, Shicheng Guo, as administrator of the estate of the deceased, Shiqian Bao. The operable complaint alleged that Bao was brought to Swedish Covenant's emergency department after experiencing a severe headache. Bao underwent a CT scan, which Dr. Kamal read and found to be normal. Bao was then released from Swedish Covenant. A few hours later, another doctor reviewed Bao's CT scan and found signs of a brain bleed, and Bao was called back to Swedish Covenant for treatment. Bao chose not to pursue further treatment at Swedish Covenant and instead immediately presented herself to the emergency department at Lutheran General Hospital (Lutheran General). Doctors at Lutheran General did another series of tests, did not diagnose a brain bleed, and discharged her from the hospital without treatment. Bao died three days later of an alleged brain hemorrhage.

¶ 2   The circuit court entered summary judgment in favor of Dr. Kamal and International Teleradiology, finding that Dr. Kamal was not liable for medical negligence because his failure to identify Bao's brain bleed was not a proximate cause of Bao's death. The circuit court also entered summary judgment in favor of Swedish Covenant and found that there was no unbroken causal link that could establish that Swedish Covenant or its alleged agents proximately caused injury to Bao. For the following reasons, we reverse and remand for further proceedings.

¶ 3           I. BACKGROUND

¶ 4   The following basic facts are undisputed. On July 10, 2013, Bao was taken by ambulance to the emergency department at Swedish Covenant complaining of a sudden onset headache. An emergency department physician ordered a CT scan of Bao's head. Around 11:20 p.m., Dr. Kamal, a teleradiologist employed with International Teleradiology, interpreted Bao's head CT scan and found no evidence of a brain bleed. Around 3:20 a.m. on July 11, 2013, Bao was discharged from Swedish Covenant.

¶ 5    Later that same morning, after Bao's discharge, Dr. Tae-Woo Kim, an attending radiologist at Swedish Covenant, performed a secondary review of Bao's CT scan and identified a subarachnoid brain hemorrhage. At approximately 9 a.m. on July 11, based upon Dr. Kim's "overread," Bao was called back to Swedish Covenant. Upon Bao's return at 10:30 a.m., Dr. James Vasilakis, an emergency department physician at Swedish Covenant, informed Bao of Dr. Kim's findings and recommended that she be admitted to Swedish Covenant for further evaluation and treatment. However, Bao declined treatment at Swedish Covenant.

¶ 6    About 11 a.m. that same day, July 11, 2013, Bao presented to the emergency department at Lutheran General, where she was seen by emergency department physician Dr. Joseph Ogarek. Bao underwent another head CT scan at 11:15 a.m. The results of this CT scan were interpreted as normal and no brain bleed was identified. Dr. Robert Kellogg, a neurosurgery fellow at Lutheran General, conducted a neurosurgery consult with Bao. At that time, Dr. Kellogg learned of Bao's history, including the previous CT scan earlier that day from Swedish Covenant that showed a subarachnoid bleed. Bao's treating doctors at Lutheran General obtained the radiology report from Swedish Covenant but not the actual CT images from Swedish Covenant. Dr. Kellogg then ordered a CT angiogram to further evaluate her condition. Around 2:40 p.m. on July 11, 2013, the CT angiogram was reported as normal. Based on her examination at Lutheran General, including the normal CT scan and normal CT angiogram reports, Bao was discharged from Lutheran General.

¶ 7    Bao died on July 15, 2013. Dr. Marc Reyes, the pathologist who performed her autopsy, reported that Bao's cause of death was an intracerebral hemorrhage and opined that it was unrelated to any bleed found three to five days earlier.

¶ 8    In plaintiff's fourth amended complaint, plaintiff alleged that Dr. Kamal's and Swedish Covenant's failure to promptly identify and treat Bao's brain bleed wrongfully caused her death. Specifically, plaintiff alleged that Dr. Kamal's failure to diagnose Bao's subarachnoid brain hemorrhage and failure to advise the emergency room of her condition deprived Bao of treatment and aggravated the underlying medical condition that caused her death. Plaintiff alleged that International Teleradiology was liable for Dr. Kamal's failures under the theory of actual or apparent agency and the doctrine of *respondeat superior*. Plaintiff also asserted claims of actual or apparent agency liability against Swedish Covenant based on Dr. Kamal's failure to diagnose Bao's condition. Plaintiff further alleged that Swedish Covenant was liable under *respondeat superior* for Dr. Vasilakis's failure to transmit Bao's CT images to Bao or to communicate these images to the doctors at Lutheran General and that this failure caused Bao's brain hemorrhage to go untreated until her death. Plaintiff also asserted that unidentified actual or apparent agents of Swedish Covenant failed to communicate Bao's test results to Lutheran General, failed to transfer her properly to Lutheran General, and failed to follow standards of care related to the transmission of CT records.

¶ 9    The trial court entered a case management order stating that all dispositive motions were to be filed prior to October 26, 2018. The trial court did not set a schedule for controlled expert witness discovery until October 30, 2018, after the deadline for filing dispositive motions.

¶ 10   Dr. Kamal and International Teleradiology filed a motion for summary judgment on October 17, 2018. The motion argued that plaintiff failed to establish that Dr. Kamal proximately caused Bao's death because (1) there was no evidence in the record to support a connection between the brain bleed that he failed to identify on Bao's CT scan and the bleed that killed Bao and (2) there was no evidence that his failure to identify the brain bleed on

Bao's CT scan affected her ultimate course of treatment at Lutheran General. Attached to the motion were plaintiff's fourth amended complaint and transcripts of the depositions of Dr. Kamal, Dr. Kim, Dr. Vasilakis, Dr. Ogarek, Dr. Kellogg, Dr. George Bovis (the neurosurgery attending physician at Lutheran General who supervised Dr. Kellogg), and Dr. Reyes.

¶ 11 Swedish Covenant also moved for summary judgment. The hospital argued that it was not liable for any alleged negligence because plaintiff could not establish that Dr. Kamal and Dr. Vasilakis were actual or apparent agents of Swedish Covenant. The hospital also argued (1) that plaintiff failed to establish a causal connection between the brain bleed that Dr. Kamal failed to diagnose and the bleed that killed Bao and (2) that plaintiff failed to establish a causal connection between Swedish Covenant's failure to transmit the CT images and the alleged negligence of Bao's doctors at Lutheran General. In support of its motion, Swedish Covenant attached the operative complaint, transcripts of the depositions of Vincent Lengerich (Bao's boyfriend at the time of her death), Dr. Kamal, Imelda Prado (the clinical care coordinator at Swedish Covenant's emergency department), Dr. Vasilakis, Dr. Ogarek, Dr. Kellogg, Dr. Bovis, Dr. Reyes, Ellen Katz (Bao's coworker at the time of her death), plaintiff's medical malpractice affidavit (submitted pursuant to section 2-622 of the Code of Civil Procedure (735 ILCS 5/2-622 (West 2014))), and hospital records of the phone calls from Swedish Covenant to Bao regarding her need to return to the hospital for treatment.

¶ 12 On December 20, 2018, the circuit court entered summary judgment in favor of Dr. Kamal and International Teleradiology on the issue of proximate cause, finding that Bao's decision to decline treatment at Swedish Covenant and pursue "duplicative" treatment at Lutheran General broke the causal chain between Dr. Kamal's failure to diagnose and failure to treat her condition and her death. The circuit court also found that there was no just reason to delay enforcement or appeal of its order pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). Plaintiff filed a timely notice of appeal.

¶ 13 On February 1, 2019, the circuit court entered summary judgment in favor of Swedish Covenant on the issue of proximate cause, again finding that Bao's decision to decline treatment at Swedish Covenant and to pursue "duplicative" treatment at Lutheran General broke the causal chain between Swedish Covenant's failure to transmit their CT images to Lutheran General and Bao's death. The circuit court also found that there was no viable theory of vicarious liability against Swedish Covenant for the actions of its alleged agents because of the break in the causal chain. The circuit court found that there was no reason delay enforcement or appeal of its order pursuant to Rule 304(a). Plaintiff again filed a timely notice of appeal, and the two appeals were consolidated.

¶ 14                                    II. ANALYSIS

¶ 15 The issue on appeal is whether the circuit court erred in entering summary judgment in favor of Dr. Kamal, International Teleradiology, and Swedish Covenant by finding that plaintiff could not establish an unbroken causal link between their alleged negligence and Bao's death.

¶ 16 Plaintiff argues that he presented sufficient affirmative evidence to establish a question of fact as to whether (1) the subarachnoid bleed that Dr. Kamal failed to identify was related to the brain bleed that caused Bao's death, (2) Dr. Kamal's failure to initially identify Bao's brain bleed proximately caused her death, and (3) Swedish Covenant's failure to transmit Bao's CT images to Lutheran General proximately caused her death. Plaintiff argues that the judgment

of the circuit court should be reversed and the case should be remanded for the circuit court to enter a finding on plaintiff's agency theories of liability against Swedish Covenant. For the following reasons, we agree with plaintiff. We reverse the judgment of the circuit court and remand for further proceedings.

¶ 17 Summary judgment is a drastic measure that should only be allowed where the moving party's right to relief is "clear and free from doubt." *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2014). "A genuine issue of material fact exists where the facts are in dispute or where reasonable minds could draw different inferences from the undisputed facts." (Internal quotation marks omitted.) *Buck v. Charletta*, 2013 IL App (1st) 122144, ¶ 56. When determining the existence of a genuine issue of material fact, courts construe the pleadings, exhibits, depositions, affidavits, and admissions against the movant and in favor of the nonmovant. *Purtill*, 111 Ill. 2d at 240. We review the circuit court's ruling on summary judgment *de novo*. *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, ¶ 16.

¶ 18 In a medical negligence action, the plaintiff must prove (1) the standard of care against which the defendant's conduct should be measured, (2) the defendant negligently failed to comply with that standard, and (3) the plaintiff's injury was proximately caused by this failure. *Purtill*, 111 Ill. 2d at 241-42. The critical inquiry on proximate cause is whether a defendant's alleged negligence was "a material and substantial element in bringing about the injury, and, if so, was the injury of a type that a reasonable person would see as a likely result of his or her conduct?" *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 258-59 (1999). Where a plaintiff alleges that medical negligence caused a lost opportunity for treatment, the plaintiff may establish proximate cause through evidence, "to a reasonable degree of medical certainty, that the defendant's failure to render a timely diagnosis more probably than not compromised the effectiveness of treatment received or increased the risk of harm to the plaintiff." *Scardina v. Nam*, 333 Ill. App. 3d 260, 269 (2002).

¶ 19 "Proximate cause is ordinarily a fact question to be decided by a jury, but if there is no material issue of fact or only one conclusion is clearly evident, it may be decided as a matter of law." *Buck*, 2013 IL App (1st) 122144, ¶ 58. In a medical malpractice action, the plaintiff bears the burden to present expert testimony that establishes the standard of care and that breach thereof was the proximate cause of the plaintiff's injury. *Id.* ¶ 59. The causal connection must be established to a reasonable degree of medical certainty and "must not be contingent, speculative, or merely possible." (Internal quotation marks omitted.) *Id.* "[T]he weight to be given to medical expert testimony is for the trier of fact to determine, and where the evidence is conflicting it is within the jury's province to resolve the conflict." *Wodziak v. Kash*, 278 Ill. App. 3d 901, 913-14 (1996).

¶ 20 Plaintiff alleges that Dr. Kamal's failure to diagnose Bao's condition and refer her for treatment on July 10 proximately caused Bao's death by depriving her of the opportunity for immediate treatment for her subarachnoid hemorrhage and underlying high blood pressure, which caused the subsequent brain hemorrhage that killed her. Plaintiff characterizes the lost opportunity for treatment on the night of July 10 as distinct from the opportunity for treatment on the morning of July 11. On summary judgment, plaintiff bears the burden of presenting

- 5 -

evidence, to a reasonable degree of medical certainty, that Dr. Kamal's failure to diagnose Bao's subarachnoid hemorrhage on July 10 was a material and substantial element in bringing about her subsequent death and that her death was a likely result of Dr. Kamal's conduct.

¶ 21    We find that plaintiff has presented sufficient evidence on this issue with Dr. Larkins's affidavit. Dr. Larkins opines to a reasonable degree of medical certainty that the subarachnoid brain hemorrhage that Dr. Kamal failed to diagnose on July 10 and the intracerebral brain hemorrhage that caused Bao's death on July 15 "resulted from the same underlying process or condition," high blood pressure; that had Dr. Kamal identified the brain bleed on her CT scan, Bao would have been admitted for treatment on the night of July 10 and she would have been successfully treated for the underlying high blood pressure condition that caused her subsequent, fatal hemorrhage; and that Dr. Kamal's failure to diagnose Bao's subarachnoid hemorrhage proximately caused her death. This evidence shows that Dr. Kamal's failure to diagnose Bao's bleed and underlying high blood pressure increased the risk of harm to Bao. Dr. Vasilakis also testified that because Dr. Kim diagnosed her with a subarachnoid brain bleed, Bao would have been admitted for treatment. This testimony, in conjunction with Dr. Larkins's opinion that Bao would have been admitted for treatment at Swedish Covenant if Dr. Kamal had diagnosed her subarachnoid hemorrhage, shows that Dr. Larkins's opinion that Dr. Kamal's negligence likely resulted in Bao's death is not merely speculative or conclusory. Thus, plaintiff presented evidence to a reasonable degree of medical certainty that Dr. Kamal's failure to diagnose Bao's brain hemorrhage increased the risk of harm to Bao by depriving her of an opportunity for immediate treatment of her high blood pressure condition and that Bao's death was the likely result of Dr. Kamal's alleged negligence. Therefore, plaintiff established a question of fact as to whether Dr. Kamal's alleged negligence proximately caused Bao's death. The testimony of the Lutheran General physicians to the effect that they would have done nothing different had they had all the information from Swedish Covenant only adds additional consideration for the jury to resolve on this material question of fact.

¶ 22    In entering summary judgment in favor of Dr. Kamal and International Teleradiology, the circuit court found that "Bao herself broke the causal chain between Dr. Kamal's allegedly inadequate care and her eventual death" by refusing to be admitted to Swedish Covenant for treatment on July 11, "even if both bleeds were caused by the same condition, and even if Dr. Kamal should have been able to further identify and treat the condition." This finding was at best premature because plaintiff had met its evidentiary burden on summary judgment to establish proximate cause and because Dr. Kamal had not established through expert medical testimony that Bao's refusal of treatment on July 11 was an effective intervening cause that broke the causal connection between his alleged negligence and Bao's death. *Johnson v. Ingalls Memorial Hospital*, 402 Ill. App. 3d 830, 843 (2010) ("Although the issue of proximate cause is generally a question of fact, at the summary judgment stage the plaintiff must present some affirmative evidence that it is 'more probably true than not true' that the defendant's negligence was a proximate cause of the plaintiff's injuries. [Citations.]" (Internal quotation marks omitted.)).

¶ 23    "Proximate cause is that cause which produces an injury through a natural and continuous sequence of events unbroken by any effective intervening cause." *Mengelson v. Ingalls Health Ventures*, 323 Ill. App. 3d 69, 75 (2001). There may be more than one proximate cause of an injury, and a defendant "is liable for its negligent conduct whether it contributed in whole or

in part to the injury as long as proximate cause exists." *Chambers v. Rush-Presbyterian-St. Luke's Medical Center*, 155 Ill. App. 3d 458, 465 (1987).

> "If the negligence charged does nothing more than furnish a condition which made the injury possible and that condition causes an injury by the subsequent independent act of a third party, the creation of that condition is not the proximate cause of the injury. [Citation.] The subsequent independent act becomes the effective intervening cause which breaks the causal connection, and itself becomes the proximate cause." *Kemp v. Sisters of the Third Order of St. Francis*, 143 Ill. App. 3d 360, 361 (1986) (citing *Merlo v. Public Service Co. of Northern Illinois*, 381 Ill. 300 (1942)).

¶ 24 Here, plaintiff alleged, with support from Dr. Larkins's affidavit, that the negligence of Dr. Kamal did more than furnish a condition which made Bao's death possible; it materially and substantially increased the risk of harm to Bao by depriving her of a definitive opportunity for treatment that could have alleviated the underlying high blood pressure condition that allegedly caused her death. Dr. Kamal presented no evidence of a subsequent, intervening cause that broke the causal connection between his alleged negligence and Bao's death. Rather, Dr. Kamal speculates that Bao would have refused an offer of treatment that he never made. Dr. Kamal presented no evidence to show, to a reasonable degree of medical certainty, whether Dr. Kim's subsequent overread that disclosed a hemorrhage and Bao's later refusal of treatment at Swedish Covenant was an effective intervening cause that broke the causal connection, if any, between his alleged negligence and Bao's death. In short, plaintiff established through Dr. Larkins's expert affidavit a material question of fact on whether Dr. Kamal's reading of the CT scan increased the risk of harm to Bao and proximately caused her death four days later. Dr. Kamal presented nothing to refute this on summary judgment, and even if he had, a question of material fact would remain for a jury to decide.

¶ 25 Questions of fact exist as to whether (1) Dr. Kamal's failure to identify Bao's brain bleed deprived Bao of treatment proximately caused her death and (2) Dr. Kamal's failure to diagnose and treat Bao was a proximate cause of the fatal bleed on July 14. Whether the events that occurred after Bao was released from Swedish Covenant in the early morning of July 11 broke any causal connection between Dr. Kamal's alleged negligence and Bao's death was not supported by any medical evidence sufficient to warrant summary judgment in favor of Dr. Kamal and International Teleradiology on the issue of proximate cause.

¶ 26 For the same reasons, the trial court erred in dismissing the vicarious liability claims against Swedish Covenant based on the finding that Dr. Kamal's alleged negligence was not a proximate cause of Bao's death. We note that expert discovery on the issue of proximate cause was not completed at the time the parties complied with the circuit court's standing order. The parties candidly admitted at oral argument that no objection to the standing order was made regarding the date for submission of dispositive motions despite the fact that expert discovery had not been completed. Notwithstanding this failure to object, we find the completion of expert discovery is critical to the issue of proximate cause, and after completion of expert discovery the parties may, if they so choose, again raise the issue proximate cause if they can in good faith argue that a material issue of fact does not exist.

¶ 27 The circuit court also granted summary judgment in favor of Swedish Covenant because it found "no causal link" between the failures of Swedish Covenant's alleged employees and agents and Bao's death. The circuit court found that because Bao's doctors at Lutheran General testified that viewing the CT images from Swedish Covenant would not have changed their

treatment, "there's no question of fact as to whether Swedish Covenant or any of its doctors could have affected the causal chain once Ms. Bao declined treatment from them." Plaintiff argues that the circuit court erred in (1) not entering a finding on its agency theories of liability against the hospital and (2) failing to find that a question of fact exists as to whether Swedish Covenant's failure to give the CT images to Bao or transmit the images to Lutheran General proximately caused Bao's death. We agree.

¶ 28 "In medical negligence cases, a hospital may face liability under two separate and distinct theories: (1) vicarious liability for the medical negligence of its agents or employees; and (2) liability for its own institutional negligence." *Longnecker v. Loyola University Medical Center*, 383 Ill. App. 3d 874, 885 (2008). "The concept of proximate cause is the same under professional and institutional negligence." *Id.*

¶ 29 Plaintiff alleged that Swedish Covenant is liable for the acts and omissions of its alleged agents and employees, including Dr. Kamal and Dr. Vasilakis, for failing to diagnose and treat Bao's brain hemorrhage. The circuit court entered no finding as to whether Dr. Kamal and Dr. Vasilakis were agents of Swedish Covenant but instead entered summary judgment in favor of Swedish Covenant by finding that Bao's refusal to accept treatment at Swedish Covenant broke the causal chain between the alleged negligence of Swedish Covenant's alleged agents and Bao's death. As discussed above, Dr. Larkins opined that there was a causal connection with both Dr. Kamal's negligence and the failure of Swedish Covenant to transmit the CT images and Bao's fatal bleed. There is no basis in the record to establish that Bao's refusal of care on July 11 severed the causal connection between the alleged negligence of the agents or employees of Swedish Covenant and Bao's death. Because we reverse this finding of the circuit court, the factual question as to Dr. Kamal's and Dr. Vasilakis's alleged agency and the questions of fact that remain as to whether the alleged agents of Swedish Covenant proximately caused harm to Bao remain unresolved and likely will best be resolved by the trier of fact. We therefore reverse the trial court's entry of summary judgment in favor of Swedish Covenant on plaintiff's vicarious liability claims against Swedish Covenant.

¶ 30 Plaintiff also argues that the affidavit of Dr. Larkins created a question of fact as to whether Swedish Covenant's failure to transmit Bao's CT images to either Bao or Lutheran General was a proximate cause of Bao's death. Swedish Covenant responds that because the CT images did not contain undisclosed information, the testimony of Dr. Bovis and Dr. Kellogg that the CT images would not have changed their treatment plan precludes the existence of a question of fact in this regard. For the following reasons, we agree with plaintiff.

¶ 31 Plaintiff cites *Buck*, 2013 IL App (1st) 122144, in arguing that a question of fact exists as to proximate cause notwithstanding the contention of the doctors at Lutheran General. In *Buck*, the plaintiff consulted an orthopedic surgeon, Dr. Troy, after complaining of neck pain. *Id.* ¶ 3. Dr. Troy ordered an MRI, the results of which were sent to a radiologist, Dr. Charletta, for interpretation. *Id.* According to Dr. Charletta's report, the MRI indicated the possibility of lung cancer and required follow-up diagnostic care. *Id.* ¶ 10. Dr. Charletta electronically made his report available to Dr. Troy's office, but he did not fax or call Dr. Troy to personally communicate his findings. *Id.* ¶ 11. Dr. Troy and a medical assistant in his office testified that they remembered Dr. Troy reading the results of the MRI report to plaintiff and advising her to seek follow-up treatment. *Id.* ¶¶ 15, 30. Plaintiff, an oncology nurse, testified that no one ever told her of the possible tumor that Dr. Charletta identified on her MRI, nor did anyone advise her to seek further care. *Id.* ¶ 35. Plaintiff did not undertake any follow up care until a

- 8 -

year later, at which point her treatment was unsuccessful. *Id.* ¶ 3. Defendants moved for summary judgment on the issue of proximate cause, arguing that Dr. Charletta's failure to personally communicate the MRI results did not affect Dr. Troy's actions and therefore did not proximately cause plaintiff's death. *Id.* ¶ 52. In response, plaintiff presented expert affidavits to show that Dr. Charletta breached the standard of care to plaintiff's detriment by failing to personally communicate the MRI findings. *Id.* ¶¶ 49-50. The trial court entered summary judgment in favor of defendants. *Id.* ¶ 54.

¶ 32    On appeal, we reversed and ruled that a question of fact existed as to whether Dr. Charletta's failure to personally communicate the MRI results to Dr. Troy to ensure his receipt of those findings proximately caused the plaintiff's death. *Id.* ¶ 60. We found that a question of fact existed as to whether Dr. Troy had ever read plaintiff's MRI report because of the conflicting testimony from Dr. Troy and his medical assistant and plaintiff. *Id.* ¶ 71. We found that "it was improper for the trial court to effectively give dispositive effect to Dr. Troy's testimony that he would not have done anything differently because the plaintiff supplied the trial court with specific evidence that Dr. Troy did, in fact, do something different than he claimed to have done." *Id.* In other words, we found that plaintiff had presented sufficient evidence to create a question of fact as to whether Dr. Charletta's failure to personally communicate the MRI findings resulted in Dr. Troy's failure to refer the plaintiff for treatment and thus proximately caused the plaintiff's death. The contradictory evidence in the record gave rise to a question of fact as to whether there was "a communication failure that allowed the information in Dr. Charletta's report to fall between the cracks, to the detriment of the patient." *Id.* ¶ 73. Thus, we found the trial court erred in entering summary judgment on proximate cause. *Id.*

¶ 33    We find that a question of fact exists as to whether Swedish Covenant's failure to communicate the CT images to Lutheran General proximately caused Bao's death. Here, like in *Buck*, plaintiff introduced an expert affidavit to create a question of fact on proximate cause. In his affidavit, Dr. Larkins stated that a reasonably qualified physician would have obtained and reviewed the Swedish Covenant CT images and would have relied on those images to admit and treat Bao for a brain bleed. Thus, plaintiff argues that Swedish Covenant's failure to transmit the CT images proximately caused Bao's death. In response, Swedish Covenant argues that its failure to transmit the CT images to the doctors at Lutheran General did not proximately cause Bao's death because the Lutheran General doctors testified that they would not have done anything differently if they had been in possession of those images. Swedish Covenant cites the testimony of Bao's doctors at Lutheran General, Dr. Kellogg and Dr. Bovis. Dr. Kellogg stated that because of the discrepancy between the Swedish Covenant CT report and the Lutheran General CT scan, the only recommendation he would have made was for a CT angiogram, which was performed anyway. Similarly, Dr. Bovis testified that his treatment of Bao using the CT angiogram was "the definitive standard." Dr. Bovis described the CT angiogram as a more "sensitive" study that is used to investigate "any possible cause of bleeding" and that "it's so unreliable what we get from an outside hospital, we just repeat the images. That's out of our routine."

¶ 34    We find that there is a factual question as to whether the doctors at Lutheran General would have treated Bao differently if they had the actual CT images from Swedish Covenant in addition to the CT report. As in *Buck*, entry of summary judgment in favor of Swedish Covenant was effectively the result of the circuit court giving dispositive weight to the

testimony of the Lutheran General physicians without consideration of the plaintiff's expert witness's affidavit. We find that resolution of the conflict between the Lutheran General doctors' testimony that they would not have changed their treatment plan and plaintiff's expert's testimony as to what the standard of care required to treat Bao involves factual findings and credibility determinations that should be left to the jury. Furthermore, Dr. Kellogg opined that had the Lutheran General doctors been given the Swedish Covenant CT images, the standard of care required a review of those images before examining Bao, and a comparison of the Swedish Covenant CT images to the Lutheran General CT images. Similarly, Dr. Larkins testified that the standard of care called for the Lutheran General doctors to review the Swedish Covenant CT images "before making a final disposition for [Bao]." Thus, there is some evidence in the record that, despite Swedish Covenant's arguments, under the applicable standard of care the Lutheran General doctors would have acted differently if they were in possession of Bao's CT images.

¶ 35 We reject Swedish Covenant's argument that *Buck* is inapposite because the Lutheran General doctors knew of Bao's brain bleed from her Swedish Covenant CT report, and therefore the Swedish Covenant CT images were not undisclosed information. The CT images were undisclosed information in this case because the images are different from the CT report itself, and as the facts of this case demonstrate, CT images may be interpreted differently by different doctors.

¶ 36 We find that there is a question of fact as to whether Swedish Covenant's failure to transmit the CT images resulted in the Lutheran General doctors' failure to diagnose and treat Bao, and thus proximately caused Bao's death. We reverse the judgment of the circuit court in favor of Swedish Covenant on the issue of proximate cause and remand for further proceedings.

¶ 37 III. CONCLUSION

¶ 38 Based on the foregoing, we find that the circuit court erred in entering summary judgment in favor of Dr. Kamal, International Teleradiology, and Swedish Covenant on the issue of proximate cause. We also find that the circuit court erred in entering summary judgment in favor of Swedish Covenant for its failure transmit Bao's CT images to Lutheran General. We therefore reverse judgment of the circuit court and remand for further proceedings.

¶ 39 Reversed and remanded.