# Illinois Official Reports

## Appellate Court

---

**_Davis v. Pace Suburban Bus Division of the Regional Transportation Authority_, 2021 IL App (1st) 200519**

---

Appellate Court
Caption

DWAYNE DAVIS and SHARLITA DAVIS, Plaintiffs-Appellants, v. PACE SUBURBAN BUS DIVISION OF THE REGIONAL TRANSPORTATION AUTHORITY, a Municipal Corporation, and ANNETTE JOHNSON, Individually and as Agent and Employee of Pace, Division of Regional Transit Authority, a Municipal Corporation, Defendants-Appellees.

District & No.

First District, Third Division
No. 1-20-0519

Filed

September 29, 2021

Decision Under
Review

Appeal from the Circuit Court of Cook County, No. 18-L-000693; the Hon. Christopher E. Lawler, Judge, presiding.

Judgment

Reversed and remanded.

Counsel on
Appeal

Leslie J. Rosen, of Leslie J. Rosen Attorney at Law, P.C., and Susan E. Loggans and Patrick Condron, of Susan E. Loggans & Associates, P.C., both of Chicago, for appellants.

Thomas V.P. Draths, Suzanne M. Crowley, Patrick F. Healy, and Scott L. Howie, of Pretzel & Stouffer Chtrd., of Chicago, for appellees.

Panel                    JUSTICE ELLIS delivered the judgment of the court, with opinion.
                         Justices McBride and Burke concurred in the judgment and opinion.


## OPINION

¶ 1    This appeal concerns two lawsuits stemming from injuries suffered by plaintiff, Dwayne Davis, while riding a Pace Suburban bus in suburban North Riverside. In one suit, plaintiff sought coverage from his automobile insurance carrier under the uninsured/hit-and-run-motorist provision of the policy, claiming an unidentified Lexus vehicle nosed out into the lane of traffic, causing the Pace driver to sharply brake to avoid a collision, which in turn caused plaintiff to fall inside the bus and sustain injuries. The unidentified Lexus driver's negligent conduct, he alleged, was a proximate cause of his injuries, triggering coverage under the insurance policy.

¶ 2    The other lawsuit—the one on appeal here—was a tort action where plaintiff sued Pace and the bus driver for negligently causing the injuries he suffered. Plaintiff's expert in this case testified that all fault fell on the Pace defendants—their negligence was the *sole* proximate cause of plaintiff's injuries, and the Lexus driver was blameless.

¶ 3    The trial court here ruled that plaintiff had taken irreconcilably different positions in the coverage lawsuit and in this lawsuit, blaming the Lexus driver in the insurance-coverage action and blaming the Pace defendants in this tort action. The court entered summary judgment for Pace and its driver based on both judicial and collateral estoppel. On reconsideration, after recognizing that the arguments against estoppel "could have merit," the trial court added an additional ground for summary judgment: that the negligence of the Lexus driver was the sole proximate cause of plaintiff's injuries, based on the court's review of the bus security videos.

¶ 4    We reverse and remand. We do not find collateral estoppel applicable. And we believe there is a question of fact regarding proximate cause, as there usually is, and thus it is not amenable to disposition on summary judgment. As for judicial estoppel, the trial court correctly determined that the doctrine applied, but this equitable doctrine should be invoked here in a less drastic manner. Rather than dismiss the lawsuit altogether, the proper remedy is to estop plaintiff from asserting the sole-proximate-cause theory against the Pace defendants that rendered the two positions irreconcilable.


¶ 5                              BACKGROUND

¶ 6    In March 2017, plaintiff was riding in a Pace bus driven by Annette Johnson heading south on Harlem Avenue in North Riverside. While the bus was moving, plaintiff left his seat and walked toward the front of the bus. Before plaintiff could exit, Johnson suddenly hit the bus's brakes when an unidentified white Lexus edged into the bus's oncoming path from a parking lot to the west. The jolt of braking caused plaintiff to tumble toward the front of the bus and crash into the farebox. Plaintiff was seriously injured and underwent two spinal fusions.

¶ 7    As noted above, plaintiff filed two lawsuits: one a tort action against Pace and Johnson, the other a claim for insurance coverage against plaintiff's insurer. Through chronologically it was the second suit filed, we begin with the lawsuit plaintiff filed against his insurer.

## I. The Coverage Case

In June 2018, plaintiffs filed suit in the chancery division of the circuit court of Cook County, which we will call the "coverage case." In the coverage case, plaintiff sued his automobile insurer, Progressive Specialty Insurance Agency, Inc. (Progressive), claiming his right to coverage under the uninsured-motorist provision of the policy. In that provision, Progressive promised that it

> "will pay for damages that an insured person is entitled to recover from the owner or operator of an uninsured motor vehicle or an underinsured motor vehicle because of bodily injury:
>
> 1. Sustained by an insured person;
>
> 2. caused by an accident; and
>
> 3. arising out of the ownership, maintenance or use of an uninsured motor vehicle ***."

Plaintiff's theory in the coverage case was that the unidentified white Lexus that edged into the Pace bus's path was an "uninsured motor vehicle" under this portion of the policy's definition: "a hit-and-run vehicle whose owner or operator cannot be identified and which strikes or causes an object to strike" the insured.

Progressive raised several arguments in support of denying coverage. First, it claimed that plaintiff was not entitled to coverage because, in its view, the vehicle was not a "hit-and-run" vehicle, as there was no "hit"—that is, there was no physical contact between the Lexus vehicle and plaintiff.

The trial court in the coverage case disagreed. It found that "hit-and-run" coverage did not require physical contact between the uninsured motorist and the insured, absent any language specifically requiring physical contact (and there was no such language, of course).

Having rejected Progressive's argument on that point, the trial court then moved on to the remaining language—namely, whether plaintiff established that the Lexus driver "caused an object to strike" plaintiff. Progressive argued that the force that propelled plaintiff into the farebox was the Pace driver hitting the brakes, not the Lexus driver pulling out in front of the bus. The court found, however, that "[t]he videos made it clear that the unidentified car did proximately cause the plaintiff to fall, because it caused the bus driver to take actions that then caused the plaintiff to fall. So I find that there is a proximate causation ***."

The court thus entered summary judgment for plaintiff, finding that coverage existed. Rather than arbitrate the issue of damages, Progressive paid plaintiff the policy limit of $50,000.

## II. The Tort Case Under Review

Six months before filing the coverage case, in January 2018, plaintiff sued the Pace defendants in the law division of the circuit court of Cook County. That is the case on appeal before us here.

The complaint alleged that the bus driver, Johnson, and by extension her employer, Pace, acted negligently by speeding; failing to keep an adequate look out; failing to properly control the bus; failing to warn passengers she was braking; and braking in a way that put the passengers in danger. The complaint continued that "[a]s a proximate result of one or more of

the aforesaid negligent acts and/or omissions" of the Pace defendants, plaintiff suffered injuries.

¶ 18 Plaintiff's expert, however, opined in his deposition *not* that the Pace defendants' actions were *a* proximate cause of plaintiff's injuries, but that they were the *sole* proximate cause:

"Q. It's your opinion that the white Lexus was not negligent in any way?

A. Correct.

Q. It's your opinion that the white Lexus didn't cause this accident?

A. Correct.

Q. So it's your opinion that the bus was the sole cause of this accident?

A. The bus and the operator and Pace as a whole."

¶ 19 Plaintiff's expert claimed that, while the accident obviously would not have happened but for the presence of the white Lexus, that vehicle was visible to the bus driver for sufficient time that the bus driver could have slowed down gradually without the need to violently slam on the brakes and cause plaintiff to lose his balance. Thus, in the expert's view, the only proximate cause of the accident was the negligence of the Pace defendants.

¶ 20 The Pace defendants moved for summary judgment. First, they argued for the application of judicial estoppel, claiming that plaintiff took contrary positions in the two cases. Plaintiff was arguing in the coverage case, on the one hand, that the negligence of the Lexus driver was a proximate cause of the accident, but he was alleging in this tort action that the negligence of the Pace defendants was the sole proximate cause.

¶ 21 The Pace defendants also argued for collateral estoppel, claiming that the issue of proximate causation had already been decided in the coverage case and could not be relitigated here. Finally, they argued that the negligence of the Lexus driver was the sole proximate cause of plaintiff's injuries, leaving the Pace defendants non-liable as a matter of law.

¶ 22 The court entered summary judgment in favor of the Pace defendants on the grounds of judicial estoppel and collateral estoppel. On reconsideration, the court stuck to its original ruling, though finding that plaintiffs' arguments against estoppel "could have some merit" and added that, in its review of the video footage, the negligence of the Lexus driver appeared to be the sole proximate cause of plaintiff's injuries. This appeal followed.

¶ 23                                                ANALYSIS

¶ 24 Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). Summary judgment is a drastic remedy that should be granted only if the movant's right to judgment is clear and free from doubt. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). If a reasonable person could draw competing inferences from the facts, summary judgment should be denied. *Id.* Our review is *de novo*. *Seymour v. Collins*, 2015 IL 118432, ¶ 42.

¶ 25 The parties focus primarily on judicial estoppel. We likewise find that question to be the only close one. For reasons we will explain later, we do not consider collateral estoppel or proximate cause to be proper bases for summary judgment. So we begin with judicial estoppel.

## I

Judicial estoppel is a common-law equitable doctrine designed to prevent a party from asserting one position in a court proceeding, benefiting from that position, and then taking an inconsistent position before a court in a later proceeding to receive favorable judgments in each of those proceedings. *Id.* ¶ 36. Its aim is "to protect the integrity of the judicial process by prohibiting parties from 'deliberately changing positions' according to the exigencies of the moment." *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)). The doctrine is intended to promote truth-seeking, while dissuading gamesmanship. *Smeilis v. Lipkis*, 2012 IL App (1st) 103385, ¶ 19.

To invoke the doctrine, the "generally required" prerequisites are that "[t]he party to be estopped must have (1) taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) have succeeded in the first proceeding and received some benefit from it." *Seymour*, 2015 IL 118432, ¶ 37.

The party asserting judicial estoppel must prove it by "clear and convincing evidence." (Internal quotation marks omitted.) *Id.* ¶ 39. The heightened burden of proof is a reflection that the doctrine of judicial estoppel is an " 'extraordinary one which should be applied with caution.' " *Id.* (quoting *Construction Systems, Inc. v. FagelHaber, LLC*, 2015 IL App (1st) 141700, ¶ 38). Thus, even if the five factors are met, the decision to apply it rests with the court's discretion. *Id.* ¶ 41. If the court finds that the party did not intend to be deceptive, or the benefit that the party guilty of estoppel obtained was insubstantial, or if the court believes that applying the doctrine would otherwise lead to unwarranted or unjust results, the court need not invoke it. *Id.* ¶ 47.

## A

We first address our standard of review. We typically review discretionary rulings like this one for an abuse of discretion. If the trial court's ruling on judicial estoppel does not terminate the litigation—because the court declines to apply it, or because it does apply it, but the litigation does not terminate as a result—the abuse-of-discretion standard would, indeed, apply. *Id.* ¶ 48. But when, as here, "the exercise of that discretion results in the termination of the litigation, and that result is brought about via the procedural mechanism of a motion for summary judgment, it follows, as well, that we review that ruling *de novo*." *Id.* ¶ 49; see *Knott v. Woodstock Farm & Fleet, Inc.*, 2017 IL App (2d) 160329, ¶ 24.

So our review here is *de novo*. Under the circumstances, we feel the need to elaborate on what this means. It means not only that we review *de novo* whether the five factors were met; it also means that if we find they are met, we then determine, in *our* discretion, without deference to the trial court, whether and how to apply that doctrine.

That is the unmistakable lesson of *Seymour*, 2015 IL 118432, ¶ 49, as quoted above. The supreme court's mandate to review *de novo* "the exercise of that discretion" (*id.*) can only mean that, in determining whether the doctrine should be applied (after the five factors are met), we are to use our own discretion in a fresh review, as opposed to reviewing the trial court's reasoning under a deferential standard of review. The supreme court could not have meant anything else. *De novo* review is a review without "defer[ence] to the trial court's judgment or reasoning." *People v. Randall*, 2016 IL App (1st) 143371, ¶ 44. "*De novo* review

is completely independent of the trial court's decision," meaning "the reviewing court performs the same analysis that a trial judge would perform." *Id.*

¶ 34   We are not alone in our understanding. In *Johnson v. Fuller Family Holdings, LLC*, 2017 IL App (1st) 162130, ¶ 43, we also reviewed the existence of the five factors *de novo* and then wrote: "Having determined that all five prerequisites are met, we must next exercise our discretion in determining whether to apply the doctrine of judicial estoppel."

¶ 35   We elaborate at this length for two reasons. First, though the Pace defendants never directly address the standard of review in their brief, they state more than once in their discussion on judicial estoppel that the trial court "was within its discretion" to find judicial estoppel, suggesting an abuse-of-discretion standard. They doubled down on those claims at oral argument. And second, we are aware of the decision in *Barnes v. Lolling*, 2017 IL App (3d) 150157, ¶ 23, where, after deciding by way of *de novo* review that the five judicial estoppel factors were present, the court then asked "whether the trial court properly exercised its discretion by applying judicial estoppel to dismiss Barnes's claim on summary judgment." Given the lack of transcripts containing the trial court's reasons, the court presumed that the trial court did not abuse its discretion and deferred to that judgment. *Id.*

¶ 36   We must respectfully depart from that portion of *Barnes*, as we find nothing in *Seymour* to suggest that a bifurcated standard of review applies to a grant of summary judgment based on judicial estoppel. To the contrary, the supreme court recognized a split in appellate authority over the standard of review before squarely settling that split by insisting on *de novo* review. *Seymour*, 2015 IL 118432, ¶¶ 43, 49. The supreme court made it clear that *de novo* consideration was appropriate in all respects and never hinted that the five factors were to be reviewed *de novo* while the discretionary decision was subject to an abuse-of-discretion standard. *Id.* ¶ 49. And it practiced what it preached; the court analyzed, "pursuant to independent consideration," whether judicial estoppel could be equitably applied under the facts of that case. *Id.* ¶ 50.

¶ 37   We align ourselves with *Johnson*, which is faithful to the supreme court's position in *Seymour*. We will review *de novo* whether the five elements of judicial estoppel are present. If they are, we will exercise our own independent discretion whether to apply that doctrine.

¶ 38                                                    B

¶ 39   We begin with the five factors. Again, we must find by clear and convincing evidence that plaintiff (1) took two positions, (2) that were factually inconsistent, (3) in separate judicial or quasi-judicial proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) succeeded in the first proceeding and received some benefit from it. *Id.* ¶ 37.

¶ 40   The parties do not dispute that prongs (3) through (5) were met. They agree that the coverage case and this tort action are "separate judicial *** proceedings," that plaintiff intended the representations made in those actions to be accepted as true by the trier of fact, and that plaintiff "succeeded in the first proceeding and received some benefit from it." *Id.* Plaintiff does quibble with the "benefit" he received in his coverage claim, given that his victory was capped by the $50,000 policy limit, while his medical bills alone were $160,000— but it is hard to deny that an outcome that gave plaintiff everything he asked for is anything but a win with at least *some* benefit.

¶ 41    The real dispute is whether plaintiff took factually inconsistent positions in those two proceedings. Plaintiff argues that the coverage case was a matter of contract interpretation that centered around whether physical contact was necessary between the hit-and-run (Lexus) driver and the insured, the issue of proximate cause being a throwaway detail. But even to the extent that causation was relevant there, says plaintiff, there can be more than one proximate cause of an injury, so even if plaintiff identified the Lexus driver's negligence as *a* proximate cause of his injuries, nothing stopped him from alleging, in the tort case, that the Pace defendants' negligence was *another* proximate cause.

¶ 42    Fair points, each of them, but on closer inspection, the circuit court and Pace defendants are correct that plaintiff was taking fundamentally incompatible positions in each case.

¶ 43    We start with the coverage case. Plaintiff sought coverage under the uninsured-motorist provision of his policy, which must also include coverage for hit-and-run drivers. State law requires it. Section 143a of the Illinois Insurance Code mandates that all automobile liability insurance include coverage for insureds "who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury *** resulting therefrom." 215 ILCS 5/143a (West 2016).

¶ 44    The purpose of this mandate is obvious. If an insured is injured by a motorist who has no insurance and is thus judgment-proof, the insured has no recourse to recoup her damages, even though she is "legally entitled to recover damages" (*id.*) from that motorist. Likewise, a hit-and-run driver, by definition, is a motorist who flees the scene of the accident and cannot be identified. Even though the insured would be "legally entitled to recover damages" (*id.*) from that motorist, she cannot, because she cannot identify the person to sue. The point of this insurance is to put the insured "in substantially the same position he or she would occupy" if the insured were able to identify and thus sue the tortfeasor. *Direct Auto Insurance Co. v. Merx*, 2020 IL App (2d) 190050, ¶ 22; see *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 57-58 (2011).

¶ 45    The uninsured/hit-and-run-motorist coverage language in plaintiff's policy with Progressive was consistent with state law to that effect. As quoted at length above, Progressive promised to "pay for damages that an insured person is entitled to recover" from the driver of a hit-and-run vehicle, defined in relevant part as "a vehicle whose owner or operator cannot be identified and which strikes or causes an object to strike" the insured.

¶ 46    So that was plaintiff's point to the court in the coverage action—he was legally "entitled to recover damages" from the Lexus driver, but he could not identify the Lexus driver. The legal argument, to be sure, was predominantly about whether physical contact between the hit-and-run vehicle and the insured was required; the trial court ruled it was not.

¶ 47    But the court did not stop there. It went on to find that the Lexus driver's negligence was a proximate cause of plaintiff's injuries. And the court was correct to reach the causation question, as plaintiff would not be "entitled to recover damages" in a negligence action against the Lexus owner absent a showing of proximate cause. See *Abrams v. City of Chicago*, 211 Ill. 2d 251, 257-58 (2004). Plaintiff recognized as much, too, alleging in his complaint in the coverage case, as he had to, that the Lexus driver's negligence was a proximate cause of his injuries.

¶ 48    So whether it was the primary focus of the coverage case or not, the circuit court was required to reach the question of proximate causation before determining that plaintiff was

entitled to uninsured/hit-and-run-motorist coverage. That insurance coverage could not apply unless plaintiff was legally entitled to recover against the Lexus driver.

¶ 49    Viewed in that light, the claim for uninsured/hit-and-run-motorist coverage was the functional equivalent of a lawsuit against the Lexus driver, the only difference being the cap on plaintiff's recovery based on the limits of the insurance policy. Otherwise, this insurance coverage action stood in lieu of a lawsuit plaintiff could not file because he could not identify the Lexus driver.

¶ 50    In the negligence action under review here, of course, plaintiff likewise had to plead that the negligence of the Pace defendants was a proximate cause of his injuries. *Id.* And plaintiff is correct that there can be more than one proximate cause of a plaintiff's injuries. *Shicheng Guo v. Kamal*, 2020 IL App (1st) 190090, ¶ 23; *Douglas v. Arlington Park Racecourse, LLC*, 2018 IL App (1st) 162962, ¶ 34. Any actor whose negligence proximately causes an injury in whole or in part is liable to the plaintiff. *Kamal*, 2020 IL App (1st) 190090, ¶ 23. There would be nothing inconsistent, in other words, with plaintiff claiming that the negligence of the Lexus driver was a proximate cause of his injuries (in the coverage case) and that the negligence of the Pace defendants was a proximate cause of his injuries (here, in the tort case).

¶ 51    The problem, however, is that plaintiff's theory in the tort action was not that the negligence of the Pace defendants was *a* proximate cause but that it was the *sole* proximate cause of plaintiff's injuries. As we noted above and repeat here, plaintiff's liability expert left no room for doubt on this point:

> "Q. It's your opinion that the white Lexus was not negligent in any way?
> A. Correct.
> Q. It's your opinion that the white Lexus didn't cause this accident?
> A. Correct.
> Q. So it's your opinion that the bus was the sole cause of this accident?
> A. The bus and the operator and Pace as a whole."

¶ 52    Plaintiff's expert did not shy away from this conclusion later in his deposition:

> "Q. You testified earlier though that you don't believe that the white Lexus was a cause of the abrupt stop, correct?
> A. Right. It's all the Pace bus driver failed to recognize the movements of the white Lexus as a hazard cue and then failed to act upon the hazard cue and use defensive driving."

¶ 53    Plaintiff's position thus morphed from claiming, in the coverage case, that he was "entitled to recover" damages from the Lexus driver, whose negligence was a proximate cause of his injuries, to claiming, here in the tort case, that the Lexus driver's actions did *not* proximately cause his injuries. The Lexus driver was now deemed blameless, and all fault, 100% of the proximate cause, was attributable to the negligence of the Pace defendants.

¶ 54    Those positions are irreconcilable. And they align this case, in many ways, with our decision in *Smeilis*, 2012 IL App (1st) 103385, cited here by the Pace defendants. In that medical malpractice action, Kathleen Smeilis was treated by multiple doctors at Glenbrook Hospital (Glenbrook) for extreme lower back pain on August 7; on August 12, she was discharged from Glenbrook for rehabilitative care into a nursing home under the supervision of a Dr. Lipkis, who first examined her on August 14. *Id.* ¶¶ 3-8. Dr. Lipkis ultimately

transferred her back to Glenbrook, and Smeilis underwent emergency surgery that corrected her problem but left her with several neurological deficits. *Id.* ¶ 9.

¶ 55 Smeilis sued the Glenbrook doctors, Dr. Lipkis, and the nursing home for failing to timely diagnose a medical condition known by the acronym "CES," a spinal condition that leads to permanent neurological damage when not treated properly. *Id.* ¶ 10. She retained an expert who testified that "had surgery been performed on August 10, Kathleen would likely have 'significantly more' neurological function." *Id.* ¶ 11. Any surgery after August 10, in his opinion, would have been too late and would have resulted in the same neurological damage Smeilis ultimately suffered. *Id.* (The relevance of August 10 is that Smeilis was still in Glenbrook Hospital on that date; she had not yet been moved to the nursing home or even met Dr. Lipkis.)

¶ 56 Smeilis settled with Glenbrook and the nursing home for $3 million and $200,000, respectively—leaving only Dr. Lipkis and his corporate entity as named defendants. *Id.* ¶ 12. Smeilis then dismissed her lawsuit and refiled it about a month later, naming only Dr. Lipkis and his corporate entity. *Id.* ¶ 13. She retained a new expert, a Dr. Chenelle, who disavowed the previous expert's conclusions, opining that the Glenbrook doctors did not deviate from the standard of care, that surgery after August 10 would not have been too late to improve her condition, and that Dr. Lipkis's negligence was the proximate cause of her injuries. *Id.* ¶¶ 13-14.

¶ 57 The trial court dismissed the case based on judicial estoppel. *Id.* ¶ 15. We affirmed, finding that Dr. Chenelle's new opinions were incompatible with those of the previous expert:

> "The plaintiffs adopted a wholly new view of the facts in order to recover against the sole remaining physician. Had the plaintiffs taken the position they take now against Dr. Lipkis, that he is solely at fault for Kathleen's current condition, in their 2001 complaint, it is reasonable to conclude that they would not have received the $3 million settlement from Glenbrook Hospital. Nor can there be any doubt that Dr. Chenelle's expert opinion was offered to convince the eventual trier of fact that Dr. Lipkis should be found wholly responsible for Kathleen's current neurological state. This was the only purpose and intended effect of Dr. Chenelle's ex[p]ert opinion." *Id.* ¶ 33.

¶ 58 Nor were we dissuaded by the fact that these opinions came from a medical expert, as opposed to the plaintiff herself. For one thing, we noted, proof of negligence in a medical malpractice case—that is, proof of a deviation from the standard of care—*had* to come from an expert practitioner. *Id.* ¶ 34. And in any event, we saw no reason why a plaintiff should be able to shield herself from judicial estoppel solely on the basis that the dramatically different positions were being articulated via an expert, as opposed to the plaintiff personally. *Id.*

¶ 59 We find the reasoning in *Smeilis* applicable, in many ways, here. In each case, the plaintiff took irreconcilable positions on proximate cause, attributing all of the blame to one defendant (or set of defendants) in one proceeding and placing at least some of the blame on a different defendant (or set of defendants) in another proceeding. True, the plaintiffs themselves did not utter these incompatible positions, but we are long past requiring that the irreconcilable positions come directly from a plaintiff's sworn testimony. See *Seymour*, 2015 IL 118432, ¶ 38. What matters is that the record " 'clearly reflect[s] that the party intended the trier to accept the truth of the party's position.' " *Id.* (quoting *Department of Transportation v. Coe*, 112 Ill. App. 3d 506, 510 (1983)). It is abundantly clear that plaintiff here intended the chancery court in the coverage case to find that the negligence of the Lexus driver was a proximate cause

of his injuries, and he intended the trier of fact in this tort action to find that the Lexus driver was blameless, and 100% of the proximate cause of his injuries was attributable to the negligence of the Pace defendants.

¶ 60    We thus find that all five factors of judicial estoppel were met. All that remains is whether, in our discretion, to apply it.

¶ 61                                              C

¶ 62    We would first note, as plaintiff does, that it does not appear that the circuit court exercised any discretion in applying judicial estoppel, at least nothing that was mentioned in the written order. The court found the five factors present and then entered summary judgment without more. See *Seymour*, 2015 IL 118432, ¶ 50 (finding no record evidence that trial court exercised discretion, as court appeared to believe that summary judgment was mandated under judicial estoppel).

¶ 63    Indeed, if anything, the trial court here seemed to retreat from its findings a bit on reconsideration, "acknowledg[ing] that [plaintiff's] arguments about judicial and collateral estoppel could have merit," at which point the trial court embraced the Pace defendants' third argument for summary judgment, that the Lexus driver's negligence was the sole proximate cause of plaintiff's injuries.

¶ 64    In any event, as we exercise our own discretion here, we consider it independently of the trial court's reasons. In the context of judicial estoppel, the case law tells us that factors we consider include the significance of plaintiff's benefit in the first proceeding as well as whether plaintiff intended to deceive or mislead the court. *Johnson*, 2017 IL App (1st) 162130, ¶ 43.

¶ 65    We briefly discussed above the benefit that plaintiff received in the coverage action. No doubt, he prevailed completely in that case, but it is fair to note, as plaintiff does, that his damages were capped at $50,000, the limits of the policy. Plaintiff tells us his medical bills alone were over $160,000, primarily from the two spinal fusions he received. So in that context, while plaintiff clearly prevailed in his suit, his benefit should be considered reduced somewhat by virtue of the policy limits. Had plaintiff been able to identify the Lexus driver and join him or her in this tort action, the potential liability to that driver would appear to have been substantially more than $50,000.

¶ 66    As for an intent to deceive the court, the Pace defendants claim first that plaintiff tried to hide the coverage case from them by not disclosing it in discovery. Specifically, they point to this interrogatory, which they claim required the disclosure of that coverage lawsuit:

        "Have you ever filed any other suits for your own personal injuries? If so, state the nature of the injuries claimed, the courts and the captions in which filed, the years filed, and the titles and docket numbers of the suits."

¶ 67    Plaintiff answered "none" to that interrogatory. The Pace defendants say that response was false and deceptive. Plaintiff says it was correct. He says he "never filed any personal injury actions for any injuries whatsoever." The coverage action, he says, sought a declaration that the uninsured/hit-and-run-motorist policy applied to the facts of this occurrence but did not seek damages for personal injury.

¶ 68    We would first note that plaintiff signed his response to that interrogatory on June 12, 2018. The coverage case was filed 10 days later, on June 22, 2018. So technically, at the time of the response, the coverage case was not a case; but of course, litigants have a duty to supplement

their answers to discovery, so that is no excuse (nor, to his credit, does plaintiff claim it as one). And it is hard to believe that plaintiff and his counsel, when answering those interrogatories, were unaware that they were about to file that coverage action.

¶ 69 That said, plaintiff is correct that, literally taken, the coverage case is not within the scope of that interrogatory. To be sure, the coverage action was an attempt by plaintiff to collect money for the harm he suffered at the hands of the unidentified Lexus motorist. As noted, the coverage case served as a stand-in for a tort lawsuit plaintiff could not file, because he could not identify the Lexus driver. Still, the coverage case was not *per se* a personal-injury claim, which is what the interrogatory asked. So we are reluctant to infer an intent to deceive when it is debatable, at best, that the lawsuit that was omitted from this interrogatory even fell within the scope of that interrogatory in the first place.

¶ 70 The Pace defendants also claim that an intent to deceive is evident from the very fact of the incompatible positions taken by plaintiff in the two lawsuits. We should note first, however, that the original pleadings in the two cases were not incompatible. The complaint in the coverage case alleged that the Lexus driver's negligence was a proximate cause of plaintiff's injuries. The complaint in this tort action alleged that the negligence of the Pace defendants was a proximate cause of plaintiff's injuries. There is nothing incompatible about those pleadings. As we have noted, there can be more than one proximate cause of a plaintiff's injury.

¶ 71 It was only later in this tort action that plaintiff retained an expert, who opined in his deposition that the negligence of the Pace defendants was the *sole* proximate cause of his injuries, and the Lexus driver was blameless. Incompatible, to be sure, with the allegations in the coverage case, but it is not as if the mere existence of this tort lawsuit was incompatible with the coverage action; it was only the specific theory articulated later that conflicted irreconcilably with the claims in the coverage case.

¶ 72 All of that said, it is appropriate to invoke the doctrine of judicial estoppel here. Even if the incompatibility between legal theories only became apparent later, it was certainly there for all to see, and it is hard to imagine that plaintiff and his counsel (the same counsel in both suits) could not have understood the incompatibility of the positions taken. Even if $50,000 was an amount he considered insufficient under the circumstances, plaintiff received a sizeable sum from Progressive based on the actions of a hit-and-run driver, only to later present an expert in a different suit who said that this same hit-and-run motorist had no fault in the matter whatsoever.

¶ 73 But whether to invoke the doctrine and how to do so are different questions. Judicial estoppel is, after all, an equitable doctrine that cannot be reduced to a rigid formula. See *Seymour*, 2015 IL 118432, ¶ 64; *Bidani v. Lewis*, 285 Ill. App. 3d 545, 550 (1996). Like any other equitable doctrine, it should be applied "as fairness and justice require." *Yorulmazoglu v. Lake Forest Hospital*, 359 Ill. App. 3d 554, 563 (2005). Consideration of any equitable doctrine includes " 'both what is fair and what is workable.' " *GX Chicago, LLC v. Galaxy Environmental, Inc.*, 2015 IL App (1st) 133624, ¶ 72 (quoting *Westcon/Dillingham Microtunneling v. Walsh Construction Co. of Illinois*, 319 Ill. App. 3d 870, 878 (2001)); see *In re Marriage of Rogers*, 283 Ill. App. 3d 719, 723 (1996) (" '[E]quitable remedies are a special blend of what is necessary, what is fair, and what is workable.' " (quoting *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973))).

¶ 74 Sometimes, the dramatic remedy of outright dismissal (or, as here, summary judgment) is necessary when invoking the doctrine. Consider *Smeilis*, 2012 IL App (1st) 103385, ¶¶ 10-15,

discussed at length above. After pinning 100% of the proximate cause on the Glenbrook defendants for failing to perform surgery by August 10 and benefitting from that theory to the tune of a $3 million settlement, equity could not possibly allow plaintiff to refile her suit against Dr. Lipkis and claim that *his* negligence was even 1% of the proximate cause, much less more. There was no middle ground, in other words; the only equitable recourse was to bar Smeilis from pursuing that second lawsuit against Dr. Lipkis at all.

¶ 75    Another good example where termination of the litigation was necessary is *Bidani*, 285 Ill. App. 3d at 547-48, where Dr. Bidani testified in his divorce action that he did not have any ownership interest in three entities—entities that, several years later, he sued for breach of contract in a separate action, claiming an ownership interest. Judicial estoppel was appropriate, and a dismissal of the contract action was the only possible recourse, as "[t]hose [two] positions [were] totally inconsistent and [could *not*] *be reconciled*." (Emphasis added.) *Id.* at 553.

¶ 76    But outright termination of the lawsuit need not be, and never has been, the only possible remedy for a court applying this equitable doctrine. For example, courts have considered whether judicial estoppel should apply to bar a party from taking a certain position in a subsequent lawsuit regarding the value of a parcel of property based on an inconsistent position taken in an earlier proceeding. See *Ceres Terminals, Inc. v. Chicago City Bank & Trust Co.*, 259 Ill. App. 3d 836, 848 (1994).

¶ 77    It seems to us that something along those lines would be more appropriate here. Plaintiff was seriously injured in an accident. We express no opinion on whether the blame should lie on the Pace defendants, the Lexus driver, plaintiff himself, or all or none of the above. But we do know that one set of defendants was subject to identification—the Pace defendants—and the other was not. Plaintiff was forced to pursue relief through his insurance policy to at least partially redress any injury caused by the Lexus driver. And he filed this suit in the law division against the parties he could identify. A bit of an odd journey for plaintiff, and one can only assume that plaintiff would have vastly preferred to identify the Lexus driver and join him in this lawsuit, where the possibility of recovery was far higher than the limits of an insurance policy.

¶ 78    We have no hesitation in saying, as we have, that the position taken in this tort case— placing all the proximate cause on the Pace defendants' negligence—was a bridge too far. But it was only his *theory* that went too far; the tort lawsuit, itself, was not incompatible with the coverage case. As we have repeatedly noted, there can be more than one proximate cause of an injury. There is nothing inconsistent about plaintiff claiming, in the coverage case, that the Lexus driver's negligence was *a* proximate cause of his injuries, while claiming here, in the tort case, that the negligence of the Pace defendants was also *a* proximate cause of his injuries.

¶ 79    Unlike *Smeilis* and *Bidani*, where the two positions taken by those parties were hopelessly incompatible, it is possible to reconcile the positions plaintiff took here. So rather than use the sword of summary judgment, we choose the scalpel of barring plaintiff from arguing sole proximate cause against the Pace defendants.

¶ 80    Plaintiff may continue to litigate this case against the Pace defendants. He may argue, via his expert or otherwise, that the Pace defendants' negligence was *a* proximate cause of his injuries. He may even argue that the Lexus driver was less at fault than the Pace defendants. But he may *not* argue that (1) the Lexus driver was not negligent or (2) the Lexus driver's negligence was not a proximate cause of his injuries; allowing him to so argue would be inconsistent with the position he took *vis-à-vis* the Lexus driver in the coverage case.

¶ 81    Applying the doctrine of judicial estoppel in this manner allows us to avoid the harsh consequences of outright termination of the lawsuit and allows plaintiff a day in court to which he otherwise would be entitled, while preventing plaintiff from arguing a position irreconcilable with an earlier one that yielded him a benefit.[1]

¶ 82                                          II

¶ 83    We explained at the outset that we found the grounds of collateral estoppel and proximate cause to be unsuitable grounds for summary judgment here. We explain why below.

¶ 84                                          A

¶ 85    Collateral estoppel is an equitable doctrine that precludes a party from relitigating an issue decided in a prior proceeding. *Talarico v. Dunlap*, 177 Ill. 2d 185, 191 (1997). The party asserting collateral estoppel must establish, at a bare minimum, that " '(1) the issue decided in the prior adjudication is *identical* with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." (Emphasis in original.) *Abramson v. Marderosian*, 2018 IL App (1st) 180081, ¶ 44 (quoting *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 390 (2001)).

¶ 86    As with judicial estoppel, its companion equitable doctrine, if the court determines that the elements of collateral estoppel have been met, it must then exercise its discretion whether to invoke it. *In re Estate of Ivy*, 2019 IL App (1st) 181691, ¶ 28. "Even where the threshold elements of the doctrine are satisfied, collateral estoppel must not be applied to preclude parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being estopped." *Nowak*, 197 Ill. 2d at 391.

¶ 87    And also like judicial estoppel, if the result of that discretion is the termination of the lawsuit via summary judgment, our review of both the finding of the necessary elements of collateral estoppel *and* the discretionary decision whether to invoke it is *de novo*. *Estate of Ivy*, 2019 IL App (1st) 181691, ¶ 29 (applying *Seymour* standard of review to collateral estoppel rulings).

¶ 88    In any event, our *de novo* review of the necessary elements is enough to convince us that collateral estoppel is inapplicable here. As noted above, the issue decided in the previous adjudication must be identical to the issue presented in this lawsuit. *Abramson*, 2018 IL App (1st) 180081, ¶ 44. It was not. True, a question of proximate cause arose in the coverage case because, as noted above, plaintiff had to establish that he was legally "entitled to recover damages" from the hit-and-run driver to obtain coverage under the Progressive Policy, and legal entitlement to recover damages includes showing that the hit-and-run driver's negligence was a proximate cause of plaintiff's injuries.

¶ 89    In contrast, the question of proximate cause in this tort case is far more involved, consisting of whether and to what extent the negligence of any one of the actors—the Pace defendants, the Lexus driver, and plaintiff himself—was a proximate cause of plaintiff's injuries. We

---

[1]At oral argument, counsel for plaintiff, though not agreeing that judicial estoppel applied, did agree that a remedy imposing a bar on plaintiff from arguing a sole-proximate-cause theory would be an appropriate remedy under judicial estoppel.

know, at a minimum, that the Pace defendants have argued that the Lexus driver's negligence was the sole proximate cause, *and* that plaintiff was contributorily negligent.

¶ 90 The court in the coverage case did not decide anything close to the questions before the court in this tort action. The court in the coverage case did not even put a percentage of proximate causation on the Lexus driver. It had no reason to. The court only had to determine whether the Lexus driver was a proximate cause of plaintiff's injuries; even the slightest percentage of proximate cause would entitle plaintiff to recover damages from the Lexus driver and thus recover under the Progressive policy. *Kamal*, 2020 IL App (1st) 190090, ¶ 23 (actor whose negligence proximately causes injury in part is liable to plaintiff). And obviously, the court in the coverage action did not decide, and had no reason to decide, whether and to what extent the negligence of the Pace defendants or plaintiff proximately caused plaintiff's injury.

¶ 91 As the issues were nowhere close to identical, collateral estoppel has no application here.

¶ 92 B

¶ 93 Finally, because it appears that the trial court added a third basis for summary judgment in ruling on the motion for reconsideration, we consider the court's ruling that, based on its review of the security camera videos from the bus, the negligence of the Lexus driver was the sole proximate cause of plaintiff's injuries, leaving the Pace defendants non-liable as a matter of law.

¶ 94 As already noted, because this determination on proximate cause came via summary judgment, our review is *de novo*. *Abrams*, 211 Ill. 2d at 258. The Pace defendants must show that there are no genuine issues of material fact, that no reasonable person could draw competing inferences from the facts, and that their right to summary judgment on proximate causation is "clear and free from doubt." *Outboard Marine Corp.*, 154 Ill. 2d at 102.

¶ 95 Proximate cause is typically a fact-intensive question not amenable to summary judgment. See *Abrams*, 211 Ill. 2d at 257-58. Here, the evidence before the court consisted of the bus's security camera videos, expert deposition testimony, and the testimony of witnesses, including that of the defendant bus driver, Johnson.

¶ 96 The security camera videos show the bus proceeding southbound on Harlem Avenue in the right lane. A white Lexus edges from a parking lot to the west (the bus's right) toward the lane of traffic the bus occupies. But initially, the Lexus stops, very close to the lane of traffic but not protruding into it. As the bus continues forward, not slowing down, the Lexus then edges forward more, ultimately rolling far enough into the lane of traffic that it would appear that the bus could no longer proceed without hitting it.

¶ 97 Right around that time, the bus stops abruptly, which causes plaintiff, who was not holding any rails at the moment, to fall forward, grab a railing, and twists backward into the fare box, before crying out in pain and falling to the floor of the bus.

¶ 98 It is abundantly clear to us that a reasonable person could draw competing inferences from what we saw on those videos. It would not be unreasonable to claim that this entire accident was the Lexus driver's fault, but neither would we rule out a fair-minded person blaming the bus driver for not slowing down earlier, if not slowly braking to a stop, before reaching the parking lot where the Lexus edged out, first near the lane of traffic and then into it. And of course, another reasonable person could blame both the Lexus driver and the bus driver to varying degrees.

¶ 99 To that, we would add the deposition testimony of plaintiff's expert that the actions of the bus driver were the sole proximate cause of the accident and thus of plaintiff's injuries. The expert testified at length that a trained bus driver should have been alerted to the "hazard cue" of the Lexus initially positioning itself right at the edge of the lane of traffic, even before the Lexus actually nosed into that lane. The driver, he testified, should have slowed down and probably come to a complete stop long before it reached the point of crossing the Lexus's potential path.

¶ 100 Plaintiff claims that even the defendant bus driver, Johnson, admitted that she was partly to blame for the accident. They cite this deposition testimony:

> "Q. So you would agree it could have been both drivers participated in this accident happening as far as the way the vehicles were operated?
>
> [PACE COUNSEL]: Object to the form.
>
> [PLAINTIFF'S COUNSEL]: You want me to have her read that question to you?
>
> A. Yes.
>
> (Question is read back.)
>
> A. Yes."

¶ 101 Whatever the import of that testimony, there is more than enough information before us to conclude that reasonable people could draw competing inferences from the security videos and the deposition testimony. Proximate cause is usually a question of fact, and it is clearly one here. Summary judgment on this question was improper.

¶ 102 CONCLUSION

¶ 103 We hold that judicial estoppel should apply to bar plaintiff from arguing that the negligence of the Pace defendants was the sole proximate cause of his injuries. The grant of summary judgment was improper in all respects. We find collateral estoppel inapplicable, and we believe proximate cause here is a question of fact not amenable to summary disposition.

¶ 104 The judgment of the circuit court is reversed. We remand to the circuit court for further proceedings consistent with this opinion.

¶ 105 Reversed and remanded.