2023 IL App (2d) 220080-U
No. 2-22-0080
Order filed January 23, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| F. GARY KOVAC, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 07-CH-1886 |
| | ) | |
| SANDRA L. BARRON, Individually and in | ) | |
| her Roles as Plenary Guardian of the Estate and | ) | |
| Person of Kenneth L. Barron, Jr., and | ) | |
| Administrator of the Estate of Kenneth L. | ) | |
| Barron, Jr., Deceased, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Sandra L. Barron, in her Role as Administrator | ) | Honorable |
| of the Estate of Kenneth L. Barron, Jr., | ) | Kevin T. Busch |
| Deceased, Defendant-Appellant). | ) | Judge, Presiding. |

JUSTICE KENNEDY delivered the judgment of the court.
Justices Schostok and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*: Proceedings on plaintiff's citation to discover assets had been extended by the trial court and did not expire automatically after six months; however, the trial court erred in applying the doctrine of judicial estoppel to bar defendant from arguing that a certificate of deposit was mistakenly listed as an asset of the judgment debtor's estate. Therefore, we affirm in part, reverse in part, and remand for a new hearing.

¶ 2    Plaintiff, F. Gary Kovac, is the former business partner of Kenneth L. Barron Jr. (Ken). On September 12, 2007, Kovac commenced the underlying action claiming that Ken had misappropriated funds from their business, including overpaying his wife Sandra L. Barron for bookkeeping services. During the pendency of the litigation, on March 19, 2009, Ken was adjudicated a disabled person and Sandra was made guardian of Ken's person and estate (Guardianship Estate). Ken passed away on February 29, 2012, and Sandra was made administrator of his estate (Probate Estate). On June 6, 2012, after a bench trial, the trial court entered judgment in favor of Kovac and against the Probate Estate in the amount of approximately $3.2 million, imposing a constructive trust against the estate.

¶ 3    On January 29, 2014, Kovac brought a citation to discover assets against Sandra. Pursuant to the citation, Kovac filed a motion for turnover of estate assets on November 13, 2020, seeking to have Sandra turn over the $19,000 value of a Rolex watch, which had belonged to Ken, and a BMO Harris Certificate of Deposit (CD) valued at approximately $212,000. On February 25, 2022, the trial court found that Sandra was estopped from arguing the CD was not part of the estate and entered a turnover order in favor of Kovac and against Sandra for the value of the watch and CD, from which Sandra now appeals. On appeal, Sandra argues that the trial court erred in finding that (1) she was judicially estopped from arguing that the CD was not an asset of the estate; (2) Kovac had failed to meet his burden of proof that the CD was an asset of the estate; and (3) the citation proceedings had previously terminated automatically under Illinois Supreme Court Rule 277(f) (eff. Jan. 4, 2013). For the following reasons, we affirm in part, reverse in part, and remand for a new hearing.

¶ 4                                    I. BACKGROUND

¶ 5    This is the third appeal arising from the underlying action. The facts of this case have been

more fully set forth in the prior appeals and are summarized as follows. *Kovac v. Barron* (*Kovac I*), 2014 IL App (2d) 121100; *Kovac v. Estate of Barron* (*Kovac II*), 2018 IL App (2d) 180269.[1]

¶ 6                             A. Trial and First Appeal

¶ 7     The underlying action involved a dispute between plaintiff, Kovac, a 50% shareholder of Pinnacle Systems, Inc., Triad Controls, Inc., and Pressroom Electronics, Inc. (Operating Companies), and Ken (deceased), the other 50% shareholder. Kovac alleged that Ken had secretly arranged, through the use of a payroll servicing company, wholly owned by Ken, to pay himself and his wife substantially more in salary despite an agreement that Kovac and Ken would take the same salaries and bonuses. Kovac further alleged that Ken formed Repair Services, Inc., a separate company wholly owned by him, and diverted the income from the Operating Companies' repair business to Repair Services without the knowledge or consent of the Operating Companies' boards of directors. Kovac also brought claims against Ken and Sandra for conversion and civil conspiracy, which the trial court dismissed pursuant to defendants' motion. The Operating Companies filed their own cross-complaint against Barron alleging mismanagement, excessive compensation, and the diversion of repair business income through Repair Services.

¶ 8     Following a bench trial, the trial court entered judgment in favor of Kovac finding Ken had defrauded Kovac by paying Sandra and himself unauthorized and excessive salaries and bonuses, awarding him $3,220,702, and the court imposed a constructive trust on Ken's estate. The trial court further entered judgment in favor of Kovac for breach of contract related to Ken's failure to pay Kovac his share of income from jointly owned rental properties and awarded Kovac $45,981.

---

[1]While *Kovac II* was an unpublished order entered pursuant to Illinois Supreme Court Rule 23(e)(1) (eff. Apr. 1, 2018), the typical "-U" appears to have been omitted from the case number.

The trial court also found Ken had breached his fiduciary duty to Kovac but awarded no additional damages. Finally, the court awarded Kovac $450,000 in punitive damages against the estate.

¶ 9     Sandra appealed the trial court's judgment against Kovac, and Kovac cross-appealed the dismissal of the conversion and conspiracy claims. On appeal, we ordered that a judgment which had been entered in favor of the Operating Companies pursuant to one of Ken's claims should have been entered on the Operating Companies' own claim. We otherwise affirmed the judgment of the trial court. *Kovac I*, 2014 IL App (2d) 121100, ¶ 114.

¶ 10                    B. Supplementary Proceedings and Second Appeal

¶ 11     Kovac brought citations to discover assets against Sandra, as independent administrator of the Estate, and certain financial institutions on January 29, 2014. A separate citation was issued against Sandra, individually.

¶ 12     On January 8, 2018, Kovac filed a combined motion for turnover pursuant to section 2-1402 of the Code (735 ILCS 5/2-1402 (West 2016)) and to compel Sandra's participation in the citation proceedings. Kovac stated in his motion that its purpose was to achieve partial satisfaction of the June 6, 2012, judgment "specifically in relation to the direct wage overpayments to Sandra." Kovac had discovered Sandra's real estate assets through public records, and he requested that they be delivered up to the sheriff for public sale and that Sandra be prohibited from making or allowing any transfer, or otherwise disposing of, "property not exempt from the wage overpayment judgment," among other relief.

¶ 13     On March 29, 2018, the trial court granted Kovac's motion. While the court recognized that Sandra was not the judgment debtor, it stated that "a portion of the judgment concerns overpayments Ken made to her, which would not be part of the estate, but would reasonably be in Sandra's possession." The court found that the amount of the wage overpayment was $821,565,

and that the amount owed to Kovac directly from Sandra was $1,682,990, which included $328,185 in prejudgment interest and $533,240 in postjudgment interest. It ordered Sandra to apprise Kovac of the nature, extent, value, and whereabouts of her personal assets, and if such assets included real estate, to deliver them to the sheriff for public sale or other method to liquidate the property. The court further prohibited Sandra from making or allowing any transfer of any property not exempt from the wage overpayment judgment.

¶ 14    Sandra filed an interlocutory appeal from the order granting injunctive relief and granting Kovac's motion for turnover and freezing her assets. We reversed on the basis the trial court had no authority to order Sandra to turn over those assets which clearly were not those of the judgment-debtor estate. *Kovac II*, 2018 IL App (2d) 180269, ¶ 25.

¶ 15                                    C. Instant Appeal

¶ 16    The instant appeal relates to a complaint filed on November 12, 2014, against Sandra in her individual capacity and in her capacity as guardian of the Guardianship Estate and administrator of the Probate Estate. The complaint alleged, in part, fraud under the Illinois Uniform Fraudulent Transfer Act (740 ILCS 160/5(a)(1) (West 2014).

¶ 17    On November 13, 2020, Kovac filed a motion for turnover of estate assets arguing as follows: Sandra was in possession of certain assets of Ken's estate, namely, the Rolex watch and the BMO Harris CD. Kovac argued that the watch and CD were listed as assets of Ken's Guardianship Estate in the estate's December 6, 2012, final inventory. The final inventory listed several items as being owned by Sandra and Ken as joint tenants with right of survivorship. Neither the watch nor the CD were included with these items. Likewise, the estate's December 30, 2014, tax return listed the CD and watch as assets of the estate, and did not list them as jointly owned property under Schedule E. The watch had been sold to Georgetown Jewelers on July 9, 2012, for

$9,500, predating the final inventory and tax return. On February 14, 2014, Sandra liquidated the CD and deposited the $200,892.10 proceeds into her BMO Harris account. On February 18, 2014, Sandra wrote herself a check out of that account in the amount of $200,000. That same day the check was deposited into an account with West Suburban Bank. In response to a subpoena issued on June 19, 2020, West Suburban Bank indicated that it had no accounts belonging to Ken, Sandra, or the estate.

¶ 18    In her response to the motion, Sandra acknowledged that the watch was an estate asset but argued that she was entitled to the proceeds of the sale as reimbursement for unpaid funeral and burial expenses. Sandra argued that the CD was mistakenly listed as an estate asset, when the CD was issued to and remained in the name of Kenneth L. Barron, Jr., Trustee or Sandra L. Barron Trustee for Lisa Bowling and Andrea Taylor Beneficiaries. In support she submitted affidavits from the attorneys who prepared the tax return and inventory, stating that the CD was mistakenly listed as an asset of the estate.

¶ 19    Along with her response brief, Sandra submitted a document entitled Certificate of Deposit Amendment, from Harris Bank dated April 9, 2009. This document had not been produced prior to the filing of her response brief on January 8, 2021. The document listed the account holders as "Kenneth L Barron Jr Trustee or Sandra L Barron Trustee for Lisa Bowling Andrea Taylor Beneficiary." Sandra claimed this was the originating document for the CD. However, Kovac argued Maria Anderson, a representative of BMO Harris, testified in her deposition that the amendment form was not the CD's originating document, that the CD had been formed on September 4, 2008, and that the account holder could have been changed between the creation of the CD and the amendment.

¶ 20    In her sur-reply Sandra produced, a document entitled Fixed Rate Certificate of Deposit

Automatic Renewal from Harris Bank. This document had similarly not been produced prior to the filing of Sandra's sur-reply. The document was dated September 4, 2008, and listed the account holder of the CD as Kenneth L Barron Jr. with no mention of a trust.

¶ 21    A hearing was held on Kovac's motion to turnover assets on February 10, 2022. At that hearing the trial court *sua sponte* applied judicial estoppel to bar Sandra from taking the position that the CD was not an estate asset. The trial court then entered an order in favor of Kovac that Sandra turn over the value of the CD and watch for a total judgment of $231,190.28.

¶ 22    Sandra timely appealed.

¶ 23                                    II. ANALYSIS

¶ 24    Sandra raises three arguments on appeal. She argues that (1) the citation proceedings had expired automatically under Illinois Supreme Court Rule 277(f) (eff. Oct. 1, 2021), (2) the trial court erred in its application of judicial estoppel to bar her from arguing that the CD was not an asset of the estate, and (3) Kovac failed to meet his burden of proof that the CD was an asset of the estate.

¶ 25    As an initial matter, Sandra argues that Kovac's statement of facts contains improper argument in violation of Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020). According to Rule 341(h)(6), the statement of facts shall represent the underlying facts of a case, "accurately and fairly without argument or comment[.]" *Id.* We agree that portions of Kovac's statement of facts are improperly argumentative, and we therefore ignore those portions. See *Beitner v. Marzahl*, 354 Ill. App. 3d 142, 146 (2004).

¶ 26    "We review *de novo* a trial court's ruling in supplementary proceedings where the trial court did not conduct an evidentiary hearing or make factual findings." *Kauffman v. Wrenn*, 2015 IL App (2d) 150285, ¶ 15. As the trial court did not conduct an evidentiary hearing or make factual

findings, our review is *de novo*.

¶ 27        A. The Citation Proceedings did not Automatically Expire.

¶ 28    We first address Sandra's argument that the termination proceedings automatically expired under Rule 277(f).

¶ 29    Sandra argues that the trial court erred in granting Kovac's motion for turnover, as the citation which initiated the underlying proceedings had long expired under Rule 277(f). Rule 277(f) reads:

> "A proceeding under this rule continues until terminated by motion of the judgment creditor, order of the court, or satisfaction of the judgment, but terminates automatically 6 months from the date of (1) the respondent's first personal appearance pursuant to the citation or (2) the respondent's first personal appearance pursuant to subsequent process issued to enforce the citation, whichever is sooner. The court may, however, grant extensions beyond the 6 months, as justice may require. Orders for the payment of money continue in effect notwithstanding the termination of the proceedings until the judgment is satisfied or the court orders otherwise." Ill. S. Ct. R. 277(f) (eff. Oct. 1, 2021).

"[T]he primary purpose of Rule 277(f) is to prevent the harassment of the judgment debtor or any third party subject to the citation proceeding." *Kirchheimer Brothers Co. v. Jewelry Mine, Ltd.*, 100 Ill. App. 3d 360, 364 (1981).

¶ 30    Sandra argues that at the latest, her first personal appearance occurred on September 1, 2017, when she sat for her citation examination, and that the citation terminated by operation of law on March 1, 2018. She also argues that the trial court was incorrect when it found that she had agreed to continue the supplemental proceedings, and points to several instances where she argued that the citation proceedings had terminated automatically under Rule 277(f).

¶ 31    In response Kovac argues that Sandra did agree to continue the proceedings at several points during the briefing and discovery. Further, Kovac argues that on May 6, 2014, the trial court entered an order which continued and extended all citations to discover assets "until further order of court." As no subsequent order was entered which modified or removed this extension, Kovac maintains that the citation had not automatically terminated.

¶ 32    We agree with Kovac that the proceedings were not automatically terminated under Rule 277(f). The May 6, 2014, extension continued the citation proceedings indefinitely which prevented them from automatically terminating. See *Shipley v. Hoke*, 2014 IL App (4th) 130810, ¶ 115 ("Rule 277(f) gives the trial court great discretion to adjust the length of supplementary proceedings to fit the particular needs of a given case. *** [T]he court could have entered an order from the outset stating that the supplementary proceedings would remain open until further order of the court[.]").

¶ 33    As Sandra does not otherwise challenge the trial court's judgment in relation the turnover of the value of the watch, we affirm the trial court's judgment with regard to the watch.

¶ 34              B. The Trial Court Erred in Applying Judicial Estoppel

¶ 35    Sandra argues that the trial court erred in finding that she was judicially estopped from arguing that the CD was not an estate asset based on her prior representation that the CD was an asset of the Guardianship Estate.

¶ 36    Our supreme court examined the doctrine of judicial estoppel at length in *Seymour v. Collins*, 2015 IL 118432, setting forth a two-step procedural and analytical sequence for judicial estoppel:

> "First, the trial court must determine whether the prerequisites for application of judicial estoppel are met. In this respect, the party to be estopped must have (1) taken two

positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) have succeeded in the first proceeding and received some benefit from it." *Id.* ¶ 47.

These prerequisites must be proved by clear and convincing evidence. *Id.* ¶ 39. "Second, if all prerequisites have been established, the trial court must determine whether to apply judicial estoppel—an action requiring the exercise of discretion." *Id.* ¶ 47. Several factors may inform the court's decision to apply judicial estoppel, including the significance or impact of the party's action in the first proceeding, and whether there was an intent to deceive or mislead versus the prior position being the result of inadvertence or mistake. *Id.*

¶ 37    Regarding the applicable standard of review, a trial court's exercise of discretion is reviewed for an abuse of discretion. *Id.* ¶ 48. However, where that discretion results in the termination of litigation, and the result is brought about via a procedural mechanism which is subject to *de novo* review, such as a motion for summary judgment or motion to dismiss, that ruling is reviewed *de novo*. *Id.* ¶¶ 43, 49. As discussed *supra* ¶ 30, the trial court's ruling on the turnover order is subject to *de novo* review.

¶ 38    Sandra argues that the trial court erred in the first step of the judicial estoppel analysis when it failed to properly consider whether the five prerequisites of judicial estoppel had been satisfied. She also maintains that the trial court was required to find that she received a benefit from her initial representation, and that there was no evidence that she received any such benefit. Kovac argues that Sandra received a benefit from her initial representation in that she successfully terminated her duties as guardian of the guardianship estate and administrator of the probate estate, and in that she was able to liquidate and retain the proceeds of the CD.

¶ 39   In rendering its ruling that judicial estoppel applied, the trial court stated,

> "As the guardian of the estate of Mr. Barron, she filed a final accounting on December 6, 2012. That accounting definitively indicated that the Harris CD, Item 6, valued at $212,109.28, was an asset of Mr. Barron. It further indicated that the Rolex watch, valued at $19,000, was an asset of Mr. Barron.
>
> Regardless of what information she now attempts to produce to this Court regarding what that asset was characterized as, she is foreclosed from taking that position. She is judicially estopped from doing so.
>
> She cannot now, ten years later, say "that was a mistake." Her obligation to the Court in December of 2012 was to file a true and correct document. She filed it and swore to its accuracy.
>
> If there was an error, her obligation was to act with diligence to correct that error in 2008. She did not. She cannot today now say that was a mistake. She is foreclosed from doing so."

¶ 40   We agree with Sandra that the trial court erred in its application of the first step of the judicial estoppel analysis. The trial court failed to properly consider whether all five prerequisites of judicial estoppel had been satisfied by clear and convincing evidence. While the trial court did consider the first four prerequisites, it made no mention of the fifth prerequisite, *i.e.*, whether Sandra was successful in the first proceeding and whether she received some benefit from it. Further, there is no evidence from the record which suggests how Sandra benefitted from her representation that the CD was an asset of the estate, owned solely by Ken.

¶ 41   Kovac argues that Sandra benefited from her previous representations by fulfilling her duties as guardian of the Guardianship Estate and administrator of the Probate Estate, and by

ultimately liquidating and retaining the CD's proceeds. It is the burden of the party asserting judicial estoppel to prove it by clear and convincing evidence. *Davis v. Pace Suburban Bus Div. of the Regional Transportation Authority*, 2021 IL App (1st) 200519, ¶ 29. We do not see how terminating her duties as guardian and administrator of the estates in and of itself constituted a benefit to Sandra, or how her representation that the CD was an asset which belonged solely to Ken rather than as an asset held jointly in trust for his and Sandra's daughters furthered those outcomes. Importantly, that representation did not enable her to liquidate and retain the CD's proceeds. If anything, her prior representation placed the proceeds of the CD in jeopardy due to the constructive trust imposed upon the estate.

¶ 42    Kovac further argues that it was not necessary to show that Sandra benefitted from her initial representation as not every one of the five prerequisites is required for the application of judicial estoppel.

¶ 43    While our supreme court has repeatedly identified the five prerequisites of judicial estoppel as "generally required" (*People v. Hernandez*, 2016 IL 118672, ¶ 18; *Seymour v. Collins*, 2015 IL 118432, ¶ 37; *People v. Runge*, 234 Ill. 2d 68, 132 (2009); *People v. Jones*, 223 Ill. 2d 569, 598 (2006); *People v. Caballero*, 206 Ill. 2d 65, 80 (2002)), suggesting that there may be circumstances under which judicial estoppel may be applied where all five factors are not met, Kovac provides no authority to support departing from the general requirements in this particular case. Instead, he argues generally that judicial estoppel cannot be reduced to a rigid formula and should be applied as fairness and justice require. See *Smeilis v. Lipkis*, 2012 IL App (1st) 103385, ¶ 19 (' "[J]udicial estoppel is flexible and not reducible to a formula." (quoting *Bidani v. Lewis*, 285 Ill. App. 3d 545, 550 (1996))); *Yorulmazoglu v. Lake Forest Hospital*, 359 Ill. App. 3d 554, 563 (2005) (equitable doctrines should be applied "as fairness and justice require"). As such, we find no basis to depart

from the general requirements in the instant case.

¶ 44    Sandra also argues that the trial court erred in applying the second step of the analysis, when it found that judicial estoppel barred her from arguing that her prior representation was the result of a mistake. We agree with Sandra. Whether the prior inconsistent position was the result of mistake or inadvertence is a factor to be considered in deciding whether to apply judicial estoppel. To say that Sandra was judicially estopped from arguing that her prior representation was a mistake puts the cart before the horse, as the trial court should have considered whether the prior position was the result of a mistake or inadvertence prior to determining whether to apply judicial estoppel. Accordingly, we find the trial court erred in applying the doctrine of judicial estoppel and reverse the turnover order with respect to the CD.

¶ 45    Sandra also argues that plaintiff failed to meet his burden of proof that the CD was an asset of the estate. However, as the trial court decided the issue on the basis of judicial estoppel, it never reached the merits of that issue. Therefore, we decline to consider this argument, and remand for a new hearing.

¶ 46                              III. CONCLUSION

¶ 47    For the reasons stated, we affirm the judgment of the circuit court of Kane County with respect to the turnover of the value of the watch, we reverse the circuit court's judgment with respect to the turnover of the value of the CD, and remand for a new hearing.

¶ 48    Affirmed in part and reversed in part.

¶ 49    Cause remanded.